DAVID BAUMIER AND MARTIN NADEAU v. JOHN B. ANTIAU.

*Landlord and tenant—Trespass—Forcible ejection from premises—
Joint participation by husband and wife—Evidence of dis-
position of defendant—Measure of damages—Settle-
ment of differences—Consideration—Rights
of counsel employed.*

65 31
66 198

65 31
79 510

65 31
124 222

65 31
s31NW 888
129 317

Defendant and his wife leased a farm to plaintiffs to work on shares, who entered into possession under the lease. Defendant became dissatisfied with plaintiffs' manner of farming, and, pending litigation on the subject, the parties met for the purpose of settling their difficulties. They differ as to the outcome of this meeting, the defendant claiming that a settlement was effected by which the suits were to be discontinued, and the possession of the leased premises was at once to be delivered to him, except the houses, in which plaintiffs were to remain for a fixed time, and that defendant entered upon the farm the following day, and thereafter worked there as occasion required. The plaintiffs deny that any settlement was made, or that they ever surrendered possession of the land, or saw defendant working thereon until some time after the alleged settlement, when they ordered him to stop such work, soon after which they were forcibly dispossessed by defendant, and brought this suit to recover the consequent damages. They recovered a judgment for $400.

1. MORSE, J., filed an opinion, concurred in by CAMPBELL, C. J., favoring a reversal of the judgment on the following grounds:

*a*—The court erred in instructing the jury that in determining whether a settlement was made, as claimed by the defendant, they could inquire into its consideration, the *sufficiency* of which was not in dispute, if the *fact* of the settlement was established, no fraud being claimed, or overreaching on the part of defendant.

*b*—Where a party employs two counsel on the trial of a case, an arrangement by which one examines the witnesses, while the other looks after the legality of the admission or rejection of testimony, is not only desirable, but a matter of *right*; and such counsel cannot be legally prevented from making objections to such testimony, and taking exceptions to the rulings of the court. Circuit court rule 63, which provides that one counsel on each side shall examine and cross-examine witnesses, does not apply to such a state of facts. The argument of such objections may be limited to one counsel on a side, in the discretion of the court.

*c*—What defendant's wife, who was part owner of the leased premises, did in his *presence* in ejecting plaintiffs, was admissible in evidence, but what she did in his *absence* was not binding on him, unless she was shown to have acted under his counsel or direction.

*d*—While evidence of the temper and disposition of defendant and his wife, as known to the plaintiffs, was admissible to show the probable effect on their minds of the alleged threats of the defendant and his wife, it was not competent to show *special* acts of violence on their part, disconnected from the violence involved in the issue, and it was error to permit plaintiffs' counsel,

in his opening to the jury, to state that defendant had done personal violence to one of plaintiffs with a knife at one time.

e—The charge as to exemplary damages was wrong, for reasons stated in the opinion.

f—It was error to permit plaintiffs to show the purchase of farming implements on the strength of the lease, the declaration authorizing no such claim for damages.

2. CHAMPLIN, J., filed an opinion in which he concurred in reversing the judgment, and held that the court erred in admitting testimony showing the temper and disposition of defendant.

3. SHERWOOD, J., filed an opinion, concurring in a reversal, and with CHAMPLIN, J., and further holding that the case was not one for exemplary damages, for reasons stated in his opinion.

Error to Monroe. (Howell, J., presiding.) Argued January 20, 1887. Decided February 10, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*C. A. Golden* (*Charles R. Whitman,* of counsel), for appellant:

If the alleged trespass was committed while the defendant was acting in good faith, and under an honest belief that he had a legal right to do so, the plaintiffs are entitled to recover only the actual damages sustained by them: *Allison v. Chandler,* 11 Mich. 542; *Druse v. Wheeler,* 22 Id. 444; *Winchester v. Craig,* 33 Id. 210.

As to rules governing the allowance of exemplary damages, see *Welch v. Ware,* 32 Mich. 77; *Stilson v. Gibbs,* 53 Id. 280.[1]

Special damages can only be recovered where they are alleged and claimed in the declaration: *Burrell v. N. Y., etc., Salt Co.,* 14 Mich. 34; *Gilbert v. Kennedy,* 22 Id. 118; *Brink v. Freoff,* 44 Id. 70; *Heiser v. Loomis,* 47 Id. 19.

*Ira R. Grosvenor,* for plaintiffs:

The nature and kind of proof called for under the declaration is like that required in actions for forcible entry and detainer; the force must be actual, or threatened personal vio

[1] On the subject of *actual* and *exemplary* damages, see *Ross v. Leggett,* 61 Mich. 445 (head-note 3).

lence under circumstances sufficient to put one in reasonable fear of personal harm: *Harrington v. Scott*, 1 Mich. 17; *Davis v. Ingersoll*, 2 Doug. 372 ; *Shaw v. Hoffman*, 25 Mich. 162; *Willard v. Warren*, 17 Wend. 262; *People v. Rickert*, 8 Cow. 226.

The action of defendant and his wife was in concert, having the same common end and purpose. The wife is presumed, in such cases, to be acting under the control and direction of her husband: *Bennett v. Seligman*, 32 Mich. 500; *Mason v. Dunbar*, 43 Id. 407; *Enright v. Hartsig*, 46 Id. 469.

MORSE, J.   The plaintiffs bring suit in an action of trespass on the case, claiming damages for being unlawfully and with force and violence dispossessed of certain premises in the township of Berlin, Monroe county, which they were holding under a lease from defendant and his wife, who were the owners in fee of the lands.

The defendant claimed a relinquishment and surrender of the lease, and of the possession of the premises, by plaintiffs to him, before the date of the alleged grievances stated in the declaration.

The verdict of the jury in the court below gave the plaintiffs $400 damages.

Certain facts are undisputed, and will be first mentioned. March 13, 1882, the defendant, John B. Antiau, and his wife, leased the premises, a farm, in writing to plaintiffs for the term of three years, with the privilege of extending it to five years, the land to be farmed on shares.   Antiau and wife were to pay the taxes, furnish two-thirds of the seed, and have one-half of the produce raised upon the place. Plaintiffs were to do all the farm work, harvesting, and threshing, and have half of the produce for their share.

The plaintiffs took possession under this lease, and farmed the land up to some time in January, 1884, at which time they had a crop of wheat on the ground, and had done some plowing in the fall before for the purpose of getting ready to sow or plant spring crops.

Antiau and wife were dissatisfied with plaintiffs' manner of farming, and claimed damages on account of the way the land had been worked. Plaintiffs also claimed damages from Antiau and wife for an alleged non-performance of the contract on their part. There was litigation pending between the parties in the circuit court, and on the twenty-fourth of January, 1884, Antiau had sued plaintiffs in justice's court. On the evening of that day, by mutual arrangement, the parties met at defendant's house, with some of their friends and neighbors, for the purpose of effecting a settlement of their difficulties.

Here the dispute begins as to the facts. The testimony upon the part of the defendant tends to show that a settlement was made,—that an agreement was made that defendant should discontinue his suit, and pay the costs. Plaintiffs were to pay the costs in the circuit court. They were to stay in the houses they were living in upon the farm until the fifteenth of March, 1884, and have what straw they wanted for their horses and cattle through the winter, and were to harvest the crop of wheat, and take their share. They were to yield up possession of the premises, except the houses, at once; and they said that Antiau could take possession that night, "right off," and that he could "consider the ground in his possession that evening." Defendant claims, and the testimony introduced by him tended to show, that he entered upon the farm the next morning early, and worked upon the same afterwards, as occasion required, and that the violence claimed by plaintiffs was done in March and April to keep plaintiffs from interfering with his possession, which up to that time they had acquiesced in.

The plaintiffs claim that, although there was considerable talk among the parties and their friends about a settlement that evening, and considerable wine drinking, they agreed to no settlement, and none was in fact made, and that the talk as to settlement and any agreement made there was by

Julius Baumier, father of one of the plaintiffs, and that the plaintiffs did not consent to any talk or agreement by said Julius Baumier; that they never yielded up possession, and that they never saw defendant doing any work upon the place until some time in March. He was building fence, and the plaintiff Baumier forbid him making such fence.

The first and main question to be determined upon the trial below was whether any settlement and relinquishment of possession took place, as claimed by defendant.

The court erred in his charge to the jury in this regard. The instructions were misleading, and calculated to convey an impression to the jury that they must go beyond the question whether a settlement took place, and inquire into the consideration of such settlement. If a settlement was made, as claimed by defendant, there could be no question, and there was no dispute, as to the sufficiency of the consideration for the same. The parties were in dispute about their rights, and in litigation in regard to the leasehold contract. They met to compromise and settle their difficulties, and an arrangement by which the litigation was to be stopped and the lease surrendered, without fraud, carried with it a sufficient consideration to support it.

But the court instructed the jury, in substance, that they must find that Antiau " gave them a fair and sufficient consideration for giving up" the premises; and that " the bargain to surrender must have been made upon a good and fair consideration given by Antiau to the plaintiffs for their rights under the leasehold;" and that, if they failed to find any such "full, complete, and valid bargain," the plaintiffs were entitled to recover. He failed to further instruct them as to what would constitute a good, fair, or sufficient consideration.

This charge authorized the jury to determine in their own minds what would be a good and sufficient consideration for the surrender of the leasehold right of the plaintiffs.

There was no fraud claimed in the settlement, and it was

not pretended that there was any overreaching or advantage taken by Antiau. The parties met and talked their differences over freely, and there was no deceit or duress practiced by Antiau. The plaintiffs simply claimed that they made no agreement themselves, and, if their friends made any for them, they did not consent to or acquiesce in it. The question should have been submitted to the jury as to whether or not there was a settlement. Under the testimony of all the parties present at the meeting, the jury had nothing to do with the question of the consideration for the agreement, if one was made.

The court further instructed the jury that—

"In addition to the agreement to surrender, and in addition to the consideration which should have been given, the plaintiffs must actually give up the lands, and put the defendant in rightful possession thereof, and the defendant must have actually entered into and taken undisputed possession of the lands, and exercised actual control, and used the lands as his own, in pursuance of the agreement, and with the consent and knowledge of plaintiffs."

This instruction was correct in the abstract, leaving out the matter of consideration; but the putting in possession of the defendant need not to have been a delivery by walking with him upon the lands in the day-time by the plaintiffs, and saying, "We give these premises up to you." But if plaintiffs said that night to defendant, "You can consider the ground in your possession this evening," or words to that effect, and, acting upon that statement, the defendant took possession the next morning, without let or hinderance from plaintiffs, and kept possession until the trouble in March, with their consent or acquiescence, the surrender would be as effective and valid as if the plaintiffs had broken a twig over the lands, or made any other symbolical delivery.

During the cross-examination of a witness who had been examined on the part of the defendant in chief by Mr. Golden, one of his counsel, Mr. Whitman, also counsel for the defend-

ant, made an objection to a question asked by plaintiffs' counsel.   The court said:

"I think I shall have to require you to abide by the rules, —to hear one counsel on a side."

Soon after, and while the cross-examination was still in progress, Mr. Whitman said:

"I move to strike out" — The court interposed,   "I cannot hear Mr. Whitman."

*Mr. Whitman.* "I take exception to the court not allowing me to make an objection."

*The Court.* "I don't take an exception from Mr. Whitman. I shall have to ask you to abide by the rule."

*Mr. Whitman.* "I wish to have it stated on the record that I rose to my feet to make a motion to strike out, not to ask a question of the witness, and I wish to take an exception to the refusal to allow me to make the motion."

*The Court.* "The court only insists that Mr. Golden is in charge of the witness, and he should make objections and be heard."

We do not think the rule will bear the construction put upon it by the circuit judge.   Circuit court rule No. 63 provides that,—

"On the trial of issues of fact, one counsel only on each side shall examine and cross-examine witnesses."

It is not desirable for the interest of the parties litigant, who have the most at stake in the suit, that this rule should be extended to objections to testimony and arguments thereon.   In the case at bar, Mr. Golden was the local or resident attorney of the defendant, and necessarily better acquainted with the facts to be adduced upon the trial than Mr. Whitman, who resided in another county.   We may presume that the latter was employed more especially to look after the law of the case.   Under the trial court's interpretation of rule 63, the defendant was precluded from receiving from Mr. Whitman the service for which he had probably employed him.

If a party has the right to employ more than one counsel upon the trial of an issue of fact, which cannot be doubted, we think an arrangement by which one counsel examines the

witness, while the other watches out for the legality of the admission or rejection of the proposed testimony, not only a desirable and advantageous one for the party, but a matter of right, which no court can take away from him unless the privilege is abused.

Mr. Whitman had a clear right to make objections, and to move to strike out testimony, and to argue his objections and motions if argument was needed or desired. The court, in his discretion, would have had the undoubted right to limit the argument upon these questions to one counsel upon a side, but he could not require that the counsel who was examining the witness in chief should alone make objections or motions and argue them. The counsel examining a witness, with his mind constantly on the alert and turned towards the questions he was asking, and the answers thereto, would not be so apt to catch at once the legal bent of a question as the counsel who did not have the witness in hand, but whose mind was directed mainly to the legal effect and tenor of the proposed testimony.

The declaration in this case, as to damages, averred that on or about the twenty-second day of March, 1834, and the fourteenth and nineteenth of April in the same year, the defendant entered upon the premises—

" With force and arms, with a strong hand and a multitude of people, and forcibly dispossessed said plaintiffs of said land, and refused to allow the said plaintiffs to occupy or cultivate the same, and threatened personal violence to said plaintiffs if they came upon the said premises, or attempted to cultivate the same; by means whereof, and by reason of the said eviction of the said plaintiffs from said premises, they have suffered great loss and damage in the deprivation of the use of said lands for the present and subsequent years, and have been deprived of their labor in preparing the fields for crops for the present year, and for the old meadow, and for the land newly seeded to grass, and for the tools and farming implements obtained for the sole purpose of farming said premises, as they were bound by the said lease to do, and from being prevented and hindered from carrying on.

and transacting their business as farmers for the present year, and for the value of said unexpired term, in all a large sum of money, to-wit, the sum of one thousand dollars ($1,000).

"And also for that the said defendant, on the day and year last aforesaid, with force and arms, broke and entered the premises above described, and then and there expelled the said plaintiffs from the premises, and continued them so expelled from thence hitherto, and still continue to be so expelled at the present time; whereby the plaintiffs, during all that time, were deprived of the premises, use, occupation, employment, and benefit of the said described lands and premises, to their great loss and damage, over one thousand dollars ($1,000)."

The plaintiffs testified substantially that on the said twenty-second day of March, in the morning, the defendant and his wife came on to the premises where plaintiffs were working. Defendant had a gun, and pointed it at them, threatening to shoot if they did not leave the farm. They left the place where they were, and went upon another part of the farm, which contained in all 166 acres. Antiau and wife followed them. Antiau pointed his gun at them, and threatened to shoot again, and in fear they went off from the premises.

On the nineteenth of April, plaintiffs were plowing on the land. Antiau and wife came into the field, the wife first, each armed with a club. Mrs. Antiau clubbed Baumier, and her husband clubbed Nadeau, and drove both of them from the premises. They did not try to work the land after that. They also gave evidence that on the fourteenth of April, while defendant was not present, Mrs. Antiau, who was lying in a corner of a field as they entered it, sprang out as they were opening the gate, and struck one of them with a piece of an iron bar, and then drew a revolver from her pocket and pointed it at Baumier's breast, whereupon the plaintiffs, fearing she would shoot, went away and left the premises.

Exception was taken to the testimony of the wife's acts; it being claimed that, as she was joint owner of the premises, she was presumably acting upon her own account, and not

under her husband. We think what she did in the presence of and acting with her husband, in March and on the nineteenth of April, was clearly admissible as a part of the transactions. But what she did on the fourteenth of April, when her husband was not present, should have been excluded. The counsel for the plaintiffs proposed upon the trial to connect her action upon that day with the defendant, but failed to do so. The defendant cannot be made responsible, in an action against him alone, for what his wife did in his absence, unless it is affirmatively shown that she was acting under his counsel or direction.

Evidence was also admitted, against objection, of the temper and disposition of both Antiau and his wife.

We are inclined to think this evidence admissible. The declaration counted not only upon the forcible and wrongful eviction of plaintiffs, but averred substantially that they were kept out of possession thereafter by threatened violence. It was therefore material to show what knowledge the plaintiffs had of the disposition and temper of defendant, and of his wife also, who was present with him on two occasions, and joined with him in the threats of personal violence. The effect of the threats upon the minds of the plaintiffs, and the influence such threats had in keeping them out of the premises, depended materially upon the known temper and character of the persons making them.

But it would not have been competent to give evidence of special acts of violence on their part, not connected with the subject-matter of the suit; and therefore it was error to permit counsel for plaintiffs, in his opening to the jury, to state that defendant had done personal violence to one of them with a knife at one time.

The court, after fairly stating the rule of damages as to the compensation for the injury to the leasehold rights of plaintiffs, further said:

"And if you should find that these plaintiffs were wrong-

fully and forcibly and with violence ejected from and prevented from using their land, why, it would be competent for you to give, in addition, some amount for what we call punitive or exemplary damages. Any such amount, if any should be given for that on that ground, should be moderate; and yet, if there is cause for it, why, plaintiffs would be entitled to something on that ground.''

The balance of the charge as to damages will be found in the margin.[1]  See *Allison v. Chandler*, 11 Mich. 542.

This charge was clearly wrong. It gave exemplary damages in case the plaintiffs recovered at all. The declaration under which plaintiffs must establish their claim to recover averred in substance that they were ejected wrongfully, forcibly, and with violence. This eviction had to be established as charged in order to recover any damages at all, and the effect, therefore, of the court's instruction was to authorize the assessment of punitive or exemplary damages in case the jury found any damages at all.

The same elements and facts necessary to be found in order to recover actual damages were also made the basis alone for additional damages, termed punitive or exemplary by the court.

---

[1] " If you find the plaintiffs entitled to recover, your next inquiry will be as to the amount of damages which they ought to receive at your hands. And, in coming to a conclusion upon this point, you will take into consideration the lease; what kind of a lease it was, what privileges it gave to these plaintiffs, how long it had to run,— it had another season, or about one more year, to run to make up the three-years term, and then with the additional privilege of extending it two years more at the time of this expiration. As I said before, you are to take into consideration what kind of a lease it was, what privileges it gave to these plaintiffs, what it required them to do, how long it had to run, what were their privileges and benefits under it; take into consideration the character of the farm, its productiveness and condition, and its capacity to be of benefit or make money for them; take into consideration the preparation they had made to carry it on, and what .s to be the value of such lands under such circumstances in the market,—what a man could afford to give for such a lease under the circumstances. And after taking a full and fair consideration of the case, considering all the testimony, why, then, if you find that the lease was of value to the plaintiffs, and that they have sustained losses and some damages by being deprived of such lands, then you should give them such fair and reasonable amount as in your good judgment would seem right and equitable.''

The charge, therefore, failed to take into consideration the motives of the defendant in making the eviction. If Antiau, in what he did, acted under the belief, honestly entertained, that he had a legal right to eject the plaintiffs, and keep them out of the premises, it was not a case for exemplary damages, and the jury should have been so instructed.

Testimony was permitted to be given by the plaintiffs that they purchased a mowing-machine, a reaper, and other tools, which they would not have bought had it not been for the taking of this lease. It is not clear from the charge of the court but that the jury may have understood therefrom that they might assess some damages against defendant on this account. The declaration authorized no such finding of damages, and the testimony was inadmissible.

The testimony in relation to the number of acres of stumps plaintiffs had cleared during their occupancy of the farm, and the amount of logging and burning done on the premises, was admissible, as the court rightly ruled, in so far as it tended to show the condition of the premises for tillage and crop-raising at the time plaintiffs were dispossessed, and went to the value of the leasehold. The court expressly forbid its use in any other way in the assessment for damages. There was no error committed in refusing to strike it from the testimony.

We have now noticed, we think, all the assignments of error relied upon by counsel for appellant in their brief and oral argument. At any rate, we find no further error in the proceedings.

The judgment of the court below will be reversed, and a new trial granted.

CAMPBELL, C. J., concurred with MORSE, J.

CHAMPLIN, J. I concur in the result arrived at by Mr. Justice MORSE. I am of opinion, however, that the court erred in admitting testimony showing the temper and disposition of defendant and his wife. It was not a case in which

the character of the defendant was in issue. The plaintiffs' right of recovery did not depend upon the good or bad character of defendant and his wife. The admission of such testimony could hardly fail to prejudice the minds of the jury, and induce the jury to increase the damages.

SHERWOOD, J. In this case I concur in the result arrived at by my Brother MORSE, but cannot in all of his views expressed in the opinion.

I agree with Justice CHAMPLIN that the temper and disposition of the defendant and his wife had nothing to do with the case, and that the evidence given upon that subject was mischievous.

I do not think the case was one for exemplary damages. Under the theory of the plaintiffs, the defendant refused to carry out the contract made with the plaintiffs under which they were to have the use of his farm; and such damages as the plaintiffs actually sustained, and which were the natural and proximate consequences of the injury, the plaintiffs were entitled to be compensated for, if found guilty of the conduct complained of, and no others or greater.

It would be a strange thing, indeed, if, under such circumstances, the actual annual rental of the property during the remainder of the term should be made the rule of damages.

I know of no such rule in a common law action to recover for injury sustained in such a case; yet this was allowed to be done, or might have been done, under the rules laid down by the judge in his charge.

The rule applicable to the facts as they appear in the record is that the plaintiffs should receive just compensation for the injury done to their rights, which, in case of being deprived of their term, could be no more than the fair value of the lease, and the rights secured thereunder, by its terms, to the plaintiffs.