## VELIE MOTOR CAR CO. v. KOPMEIER MOTOR CAR CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,765.

1. CONTRACTS (§ 10*)—REQUISITES AND VALIDITY—MUTUALITY OF OBLIGATION.

By a written contract, plaintiff, an automobile manufacturing company, purported to grant to defendant for the term of a year the exclusive right to sell its machines within certain territory, and agreed that its machines should be invoiced to defendant at stated prices. The contract required defendant to deposit $1,000, to order at least 50 machines during the year, and sell under a guaranty for a year and to maintain a repair shop and keep at least one machine in stock for exhibition. Plaintiff did not obligate itself to sell to defendant any machines and reserved the right to return the deposit and cancel the contract at any time. Held, that whether the contract be regarded as one of sale or agency, so long as it remained executory it was void for want of mutuality and not enforceable against defendant.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*

Mutuality in contract, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.]

2. CONTRACTS (§ 63*)—RECITAL OF CONSIDERATION.

A recital in a contract that each party has paid to the other $1 imports no consideration.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 268; Dec. Dig. § 63.*]

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

Action at law by the Velie Motor Car Company against the Kopmeier Motor Car Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Following is the opinion of the Circuit Court, by Quarles, District Judge:

This is an action at law to recover damages for alleged breach of an executory contract entered into between the parties in the words and figures following: [Given hereinafter, in statement of facts by Kohlsaat, Circuit Judge.]

A general demurrer has been interposed to the reply, which may be done under the Wisconsin statute.

It is conceded in argument that this demurrer reaches back to the earlier pleadings and in effect challenges the complaint, whose legal sufficiency is the question now raised for decision:

The contention of the plaintiff is that this is a legal contract for the sale by the plaintiff to the defendant of 50 automobiles at a stipulated price; that the plaintiff was ready and willing to deliver such machines, but that the defendant repudiated the contract and subjected itself to liability to respond in damages for the breach. On the other hand, the defendant contends that this is an executory contract whose consideration is mutual promises and benefits and is in reality a contract of agency; that the plaintiff having reserved to itself by the terms of the contract the right to cancel the contract at its pleasure, a corresponding right arose in behalf of defendant; that this right to cancel the contract, arbitrarily conferred upon the plaintiff, destroys the mutuality, whether the contract be one of sale or agency; that until there has been some performance under the contract it was mere nudum pactum and would not sustain the present action.

It becomes our first duty, therefore, to construe the written contract. One may search in vain within the four corners of this agreement for any apt word of purchase or sale. The clause covering the supposed sale of the 50 machines appears to be in the following language: "In consideration of the above it is understood and agreed that the Velie automobiles shall be invoiced to the party of the second part at the following net prices, f. o. b. Moline, Illinois. Velie Touring Car, 50 cars $1,440.00 net f. o. b. Illinois"—and that defendant should order for shipment at least 50 before October 31, 1910. Standing alone the above provisions fall far short of a stipulation to sell 50 Velie machines to the defendant. The language employed is not apt for such purpose. Plaintiff nowhere agrees to sell or invoice a single machine. It is quite as consistent with the other theory that the defendant was to act as exclusive sales agent of the plaintiff, and that its commission would be measured by the difference between the invoice price and the price to be obtained from customers. But when the other provisions of the written contract are read, as they must be, in connection with the provisions above quoted, the conclusion becomes irresistible that this is in essence an agency contract.

(a) Defendant agrees to handle Velie automobiles under the following conditions: What right had plaintiff to impose any conditions as to the 50 machines on the theory that they had been sold outright to the defendant? These limitations and restrictions are inconsistent with the dominion conferred by an actual sale. "The second party agrees to sell these cars to their customers under a guaranty for one year, and to keep such automobiles as sold by them in good repair and satisfy their customers."

In Metropolitan National Bank v. Benedict, 74 Fed. 184, 20 C. C. A. 379, the court say: "The stipulations of the contract are not appropriate to a contract of sale. If it was a sale, and the commission company acquired the absolute title, what concern was it of the Benedict Company when they were sold? When one merchant sells goods to another, the seller never requires the buyer to enter into a covenant that he will sell the goods within a specified period. Such a requirement is inconsistent with the dominion over property which absolute ownership confers."

(b) The contract imposes upon the second party the duty of maintaining a repair shop at its own expense and to receive credit for broken or defective parts.

(c) The plaintiff reserves the right to send an expert to install any parts of such machines, the second party to pay for the time and expense of such expert.

(d) The stipulation binding the second party to maintain certain colors and equipment, would seem entirely inconsistent with the theory, that the machines had been sold to defendant.

(e) The sphere of activity of the defendant is limited to a certain territory, and it may under no circumstances sell any automobiles outside of said territory without the permission of the party of the first part.

(f) By this contract the defendant is required to keep at least one Velie automobile in stock for inspection and demonstration, and to order for shipment at least 50 cars before October 31, 1910.

(g) This agreement expires by limitation on the 31st of October, 1910, the party of the first part having the right to return deposits and cancel this contract, and a letter written by them to the party of the second part shall have been sufficient notice. This contract is not transferable.

By the familiar canons of construction, all provisions of a contract must be resorted to, so that effect may be given to all of them if possible; and such construction, in order to arrive at the true meaning of the parties, may have recourse to the situation and circumstances attending the parties at the time the contract was made. U. S. v. Peck, 102 U. S. 64, 26 L. Ed. 46.

A careful analysis of this, entire instrument, giving weight to each provision thereof, leaves little doubt that the central thought in the minds of the parties was that defendant was to handle the Velie car manufactured by plaintiff. Three-fourths of the terms and stipulations of the contract are devoted to this point. The term "handle" involves a suitable garage and equipment to keep a Velie car continually on hand for demonstration, to look after repairs and satisfy customers, and to sell the cars to customers at such prices as to reimburse itself for outlays and secure satisfactory profit.

This case is virtually ruled by Willcox et al. v. Ewing, 141 U. S. 627, 12 Sup. Ct. 94, 35 L. Ed. 882, on both branches of the argument here presented. While the facts are not precisely the same, the reasoning of the court seems to cover the contentions here. The courts have often been called upon to construe contracts of this nature, many of which have been cited by defendant's counsel.

No useful purpose would be subserved by a review of these cases in detail. Each case depends on its own facts, and each differs in some particular from the case at bar; but the reasoning of all of them seems to sustain the view we have outlined.

In re Galt, 120 Fed. 67, 56 C. C. A. 470, in an elaborate opinion by Judge Jenkins, such a contract is construed and the distinction pointed out between a del credere commission and an outright sale. Williams Mower & Reaper Co. v. Raynor, 38 Wis. 127; Briggs v. Foster, 137 Fed. 773, 70 C. C. A. 349; John Deere Plow Co. v. McDavid, 137. Fed. 802, 807, 70 C. C. A. 422; Metropolitan Bank v. Benedict, supra.

In Thomas Manufacturing Company v. Knapp, 101 Minn. 432, 436, 112 N. W. 989, the court points out that the right of revocation is entirely inconsistent with the sale of specified goods. See, also, U. S. Rubber Co. v. Butler Bros. (C. C.) 132 Fed. 398.

Considerable stress has been laid in the argument on the provisions of the contract that these machines should be invoiced to the defendant at certain fixed prices, as indicating a sale of a fixed number of machines at stipulated prices. It will be observed, however, that the term "invoice" is not conclusive, and may be as properly used in a contract of bailment.

In Dows v. First National Exchange Bank, 91 U. S. 618, 630, 23 L. Ed. 214, the court say: "An invoice is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quality, and cost or price of the things invoiced, and this is as appropriate to a bailment as it is to a sale. * * * Hence, standing alone, it is never regarded as evidence of title." It is elementary that if this is an agency contract it may be terminated by either party (subject to certain conditions not here present). Moore v. Security Co., 168 Fed. 496, 498, 93 C. C. A. 652.

There is another difficulty with the plaintiff's position. This is purely an executory contract. There appears to be no valid consideration except mutual promises and benefits. The alleged payment of each party to the other of one dollar would not supply this lack of consideration, because, for aught that appears, the parties may have used the same dollar. Certainly such an exchange

would create neither benefit nor burden upon either. It is well understood that, to avail as a good consideration to such a contract, the promise must be absolute and certain.

In an instructive opinion by Dodge, J., in Hopkins v. Racine Co., 137 Wis. 586, 119 N. W. 301, such a contract is held to be a mere offer or option, which has no binding force unless and until the other party has accepted, and thus become bound.

Under the clause in this contract providing for a revocation by the plaintiff and the legal consequences that flow therefrom, the consideration cannot be predicated on mutual promises and benefits. Therefore another essential element of a binding contract appears to be wanting.

Whether the contract be one of sale or bailment, while it remains executory there must be mutuality. This familiar doctrine is well set forth in the case of Atlee v. Bartholomew, 69 Wis. 43, 33 N. W. 110, 5 Am. St. Rep. 103, and in Lowber v. Connit, 36 Wis. 183, where the court summarizes the law as follows: "The rule is well established that in order to bind defendant the plaintiff must also be bound by like conditions in the contract." The plaintiff has expressly reserved the right to cancel the contract, then defendant had a corresponding privilege to renounce the agreement, and no action lies on that account.

Having arrived at these conclusions, which are fatal to plaintiff's contention, it is quite unnecessary to consider the other point raised by the defendant that the plaintiff was a foreign corporation doing business in the state of Wisconsin without having complied with section 1770b of the Wisconsin Statutes 1898.

For these reasons the demurrer must be sustained.

Plaintiff in error, hereinafter termed plaintiff, filed its verified complaint at law to recover damages for breach of the following contract, made an exhibit to said complaint, viz.:

"This agreement, made and entered into this 23d day of September, 1909, by and between the Velie Motor Car Company, of Chicago, in the state of Illinois, party of the first part, and Kopmeier Motor Car Company, of Milwaukee, in the state of Wisconsin, party of the second part.

Witnesseth: That the parties hereto, in consideration of the mutual benefits to be derived from the faithful performance of this agreement, and of $1.00 each to the other paid, the receipt of which is hereby acknowledged, do hereby covenant and agree to and with each other as follows:

The party of the first agrees and does hereby extend to the party of the second part, the exclusive right of sale during the continuance of this contract for the Velie line of automobiles in the following territory:

Manitowoc, Calumet, Winnebago, Waushara, Sheboygan, Fond du Lac, Green Lake, Marquette, Ozaukee, Washington, Dodge, Columbia, Milwaukee, Waukesha, Jefferson, Dane, Racine, Kenosha, Walworth, Rock and Green Counties in Wisconsin, including Appleton, Wis.

In consideration of the above, it is understood and agreed that the Velie automobiles shall be invoiced to the party of the second part at the following net prices, f. o. b. Moline, Illinois.

Velie Touring Car ...................................................50 cars
Velie Tourabout ...............................................$1,440 net
Velie Toy Tonneau ...........................................f. o. b. Moline.
Velie Runabout for three passengers.........................................
Velie Runabout for four passengers..........................................
Velie Roadster for three passengers.........................................
Velie Roadster for four passengers..........................................
Extras  Velie Touring Car Top.......................................Extra
        Velie Roadster Top ........................................Extra
        Glass Front .............................................Extra

### Conditions.

Party of the second part agrees to handle Velie automobiles under the following conditions:

Second party agrees to sell these cars to their customers under a guaranty for one year. Second party agrees to pay all transportation charges to and

from factory, and to keep such automobiles as sold by them in good repair, and satisfy their customers.

It is distinctly understood that second party shall maintain a repair shop for the purpose of doing this work, and that the expense of installing any parts is to be borne by them; the party agreeing to furnish said parts such as are broken, or prove defective, and to give the party of the second part credit for these broken, or defective parts when they are returned to the factory.

In any case where it is necessary for the party of the first part to send a man to install any parts, party of the second part agrees to pay for the mechanic's time, and extire expenses.

In regard to colors, and equipment, second party agrees that such colors and equipment as are standard on Velie automobiles are acceptable to them. and for any special colors, or equipment, there shall be an extra charge.

Party of the second part agrees to sell automobiles strictly within the confines of the territory mentioned in this agreement, and under no circumstances to sell any automobiles outside of said territory without the permission of the party of the first part, and party of the second part agrees to anticipate automobile shipments at least thirty or forty days from the time they expect delivery, and to stick to standard color specifications wherever possible, and it is understood that if the party of the second part expect prompt deliveries, they must have their specifications in ahead of time.

### Terms.

Party of the second part agrees to make a deposit of one thousand dollars with contract, $50 on each machine contracted for, and to honor sight draft, bill of lading for balance due when shipment is made. Twenty dollars thereof to be credited on each car as ordered.

Party of the second part agrees to keep at least one Velie automobile in stock for exhibition and demonstrating during the life of this agreement, and to order for shipment at least 50 before October 31, 1910.

The party of the first part guarantees Velie automobiles free from defect in material and workmanship, and will replace defective parts for a period of one year from date of sale; they being the judges as to whether the break is caused by defects, or abuse.

Party of the first part does not guarantee tires, batteries, coils, magneto, lamps, or plugs as we use only standard makes guaranteed by the manufacturers of same.

This agreement expires by limitation the 31st day of October, 1910, the party of the first part having the right to return deposits and cancel this contract, and a letter written by them to the party of the second part shall have been sufficient notice. This contract is not transferable.

In witness whereof said parties hereunto set their hands and seals the day and year first above mentioned.

Velie Motor Car Company,
By H. G. Moore, Secretary,
Party of the First Part.
Kopmeier Motor Car Company,
By W. J. Kopmeier, Secy. Treas.,
Party of the Second Part.

Approved at Chicago, Illinois, this ——— day of ———, 19 ——."

The complaint was afterwards duly amended. In this complaint, it is alleged that plaintiff, upon the execution of the contract, granted and extended to defendant the exclusive right of sale in the territory specified in the contract, and refrained from making any sales therein, and held itself ready and willing to deliver to defendant in error, hereinafter termed defendant, said automobiles as ordered. It is further therein alleged that defendant has neglected and failed to

purchase said automobiles or any of them; that on or about February 21, 1910, defendant, without just cause or excuse, repudiated the contract and all of it, and so notified plaintiff, and refused to purchase said automobiles or any of them; that after receiving such notice, plaintiff advised defendant of its readiness to perform the contract, and demanded that defendant carry out its part of same. Damages are laid at the sum of $9,000.

To this complaint defendant made duly verified answer, setting up the payment by it of $1,000 according to the terms of the contract, admitting its repudiation of the agreement, also admitting its receipt of notice from plaintiff requiring it to perform, and denying all matters not specifically admitted, qualified, or denied. Defendant further, by way of counterclaim, set up its deposit of $1,000, as required by the contract, asking that a return of the same with interest be adjudged, and that the complaint be dismissed. By way of reply, plaintiff admits under oath the receipt of the $1,000, denies the power of defendant to cancel the agreement, claims the right to apply the $1,000 on damages growing out of defendant's breach of contract, and renews its demand for $9,000 damages. Defendant thereupon files a general demurrer, a proceeding permissible under the Wisconsin statute, and which was held to reach back to the complaint. This was sustained by the court and leave was given to amend. Afterwards, said cause coming on to be tried by the court, a jury having been waived, and complainant having failed to amend its complaint within the time specified, and proof being produced as to the counterclaim, the court made its finding of fact and conclusion of law, and on December 21, 1910, proceeded to adjudge that the complaint be dismissed, and that judgment go against plaintiff for said deposit, together with interest at 6 per cent. per annum from February 21, 1910, being the sum of $1,050, together with costs taxed at $10, and that execution issue therefor. Thereupon the cause was brought to this court on writ of error.

The errors assigned are that the court erred: (1) In sustaining the demurrer and entering judgment thereon; (2) in sustaining the objection of defendant to the reception of evidence under the reply; (3) in rendering judgment against plaintiff for the deposit and interest and costs; and (4) in dismissing the complaint.

Jackson B. Kemper, for plaintiff in error.

Henry V. Kane, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). Plaintiff contends that the contract is, in law, an agreement for the sale by plaintiff to defendant of 50 automobiles at an agreed price which plaintiff was willing to perform, and that by repudiating the contract defendant subjected itself to liability to respond as for a breach.

Defendant, on the other hand, contends that the contract is an executory agency contract, the consideration for which rests in mutual

promises; that by reason of the option reserved by plaintiff to terminate it at its pleasure, defendant was entitled to a like option; "and that," in the language of the trial judge:

"This right to cancel the contract arbitrarily conferred upon the plaintiff destroys the mutuality, whether the contract be one of sale or agency; that until there has been some performance under the contract, it was nudum pactum and would not sustain the present action."

In support of its contention that the contract was one of sale, plaintiff cites the following excerpts from said contract, viz.:

"In consideration of the above, it is understood and agreed that the Velie automobiles shall be invoiced to the party of the second part at the following net prices, f. o. b. Moline, Illinois" (giving same).

"Party of the second part agrees to keep at least one Velie automobile in stock for exhibition and demonstrating during the life of this agreement, and to order for shipment at least 50 before October 31, 1910."

Also:

"The party of the first part agrees and does hereby extend to the party of the second part, the exclusive right of sale during the continuance of this contract for the Velie line of automobiles in the following territory:" (Some 21 counties in the state of Wisconsin.)

Plaintiff further contends that defendant held and enjoyed such exclusive right of sale in said territory from the time the contract went into effect, i. e., the fall of 1909, and that defendant thus having received the consideration agreed to be given to it, the contract was in part executed, and therefore not wholly executory.

For defendant the following clauses, in substance, of said contract are cited, in support of the claim that the contract was executory and one of agency. The contract imposes upon defendant certain conditions in the handling of Velie automobiles, in substance as follows, viz.: To sell under a one-year guaranty, to pay transportation charges to and from factory; to keep cars sold by them in good repair and satisfy their customers; and to maintain a repair shop; and also confers on plaintiff the right to return the $1,000 and cancel the contract, giving notice by writing a letter to that effect to defendant.

[1] From the foregoing, it will be seen that plaintiff did not obligate itself to sell and deliver to defendant any automobiles. It virtually reserved the right to do nothing at all. Defendant had the right to sell to its customers, but was entirely at the mercy of plaintiff when it came to filling the order. Whatever automobiles plaintiff might choose to supply to defendant were to be invoiced at a stipulated price. None in fact were ever ordered by defendant.

In Dows v. First National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214, it is said, "An invoice is not a bill of sale nor is it evidence of sale." Unless the defendant received a consideration for its undertakings by being given the exclusive right to sell within the given territory, the contract lacks mutuality. But it will be seen that such right, if any, was made subject to plaintiff's right to arbitrarily, and without assigning any cause, cancel the contract. Defendant might well decline to go to the expense and trouble of advertising and de-

veloping the territory named, when its rights might at any time be terminated.

Whatever construction should be given to the contract, whether it be one of sale or of agency, while it remains executory there must be mutuality. Attel v. Bartholomew, 69 Wis. 43, 33 N. W. 110, 5 Am. St. Rep. 103; Lowber v. Connit, 36 Wis. 183.

Can it be said that any exclusive right to sell in the territory named passed to defendant under the facts as here presented? In American Agricultural Chemical Company v. Kennedy (1904) 103 Va. 171, 48 S. E. 868, the court, dealing with this question, says:

"In this case the plaintiff made a proposition to sell, which the defendants accepted, but the plaintiff's offer left it optional with it whether or not it would sell. It did not bind itself to sell. The defendants made no continuing offer to purchase. Their engagment was to purchase upon the terms and conditions stated in the plaintiff's proposition to sell. As that proposition did not bind the plaintiff to sell, there was no consideration for the defendants' promise to purchase, and, as we have seen, neither party was bound at that time. The plaintiff, after that time, never did any act or made any promise which bound it to complete the contract. There never was a time when the defendant had the right to tender the price and demand the fertilizer. In the absence of such obligation on the part of the plaintiff and of such right on the part of the defendants, there never was a binding engagement between the parties which a court of law would enforce."

[2] It is a fundamental rule of law that contracts, in order to be binding, must be mutual. 9 Cyc. 327, and cases cited. The phrase of the contract which reads, "and of $1.00 each to the other paid," etc., imports no consideration. As said by the trial judge, it may well mean the exchange of the same dollar. Taking into consideration the whole contract, we are of the opinion that by reason of want of mutuality the contract is, under the circumstances, unenforceable.

There was no error in the judgment of the Circuit Court, and it is therefore affirmed.