## LUDWIGSEN v. LARSEN.

1. LANDLORD AND TENANT—FORCIBLE ENTRY AND DETAINER.

   Where defendant landlord, without taking the proper statutory method to terminate an oral lease, caused a writ of attachment to be issued under which the sheriff levied upon certain of plaintiff tenant's goods in the premises, and defendant personally fastened the front door and caused the light and water, which were to be provided by him under the lease, to be shut off, said acts amounted to a forcible expulsion of plaintiff, for which defendant is liable to respond in damages.

2. SAME—TENANT UNLAWFULLY OUSTED MAY RECOVER LOSS OF PROFITS.

   Loss of profits by a tenant caused by unlawful ouster by the landlord, where they can be shown with reasonable certainty, held, recoverable in an action therefor.

3. SAME—PAST PROFITS—DAMAGES—MEASURE OF DAMAGES.

   Past profits may not be taken as the exact measure of future profits, but may be considered and allowed such weight. as they may be found entitled to in arriving at loss sustained.

On loss of profits as element of damages for eviction, see note in 53 L. R. A. 102.

On loss of profits as element of damages for wrongful attachment, see notes in 52 L. R. A. 33; 46 L. R. A. (N. S.) 470.

4. SAME—TIME FOR WHICH DAMAGES RECOVERABLE.

Where plaintiff's right of occupancy might have been terminated on June 1st by a notice to quit if given at the time of her eviction on April 6th, no injustice is done her by limiting her damages to those sustained prior to June 1st, in view of her testimony. that, although she made an effort to do so, she was unable to secure other premises until the following December.

Error to Manistee; Cutler (Hal. L.), J.     Submitted April 30, 1924.     (Docket No. 24.)     Decided June 2, 1924.     Rehearing denied October 6, 1924.

Case by Ingeborg Ludwigsen against Fred C. Larsen for a wrongful eviction from leased premises. Judgment for plaintiff for less than amount claimed. She brings error. Reversed.

*Howard L. Campbell,* for appellant.

*F. H. Stone* and *Thomas Smurthwaite,* for appellee.

SHARPE, J.     On March 1, 1918, plaintiff, under an oral contract, leased certain premises, including furniture, dishes, etc., in the city of Manistee, from defendant for the purpose of conducting a restaurant therein. The premises also contained living apartments. Heat, water and light were to be provided by the defendant. The rent agreed upon was $20 per month, payable monthly. No time limit was fixed. In the fall of that year, by mutual consent, the rent was increased to $25 per month. Plaintiff occupied the premises until April, 1922. She was then indebted for rent past due in the sum of $90. On the 6th day of that month, defendant caused a writ of attachment to be issued, under which the sheriff levied upon certain of plaintiff's goods in the premises. The attachment was afterwards dissolved. Defendant, personally, put a fastening on the front door, and caused the light and water to be shut off. Plaintiff

soon after vacated the premises and began this action in trespass on the case to recover the damages she sustained by reason of her eviction.

The declaration alleges that for two years prior to her eviction plaintiff—

"was doing a large restaurant business, which yielded her a net profit of about $150 per week.   *   *   * That by reason of her being unlawfully ousted and ejected by the defendant, plaintiff has suffered a loss of a spring, summer and fall restaurant business, aggregating a loss to her of four thousand nine hundred fifty dollars."

She also claimed damages in the sum of $75 for the value of certain meats, milk and vegetables in the ice box when defendant took possession, and which were allowed to spoil and become worthless.

The trial court instructed the jury:

"I charge you, as a matter of law, that the defendant, not having given this written notice, as he was required to do by the law of this State, that in evicting her at the time, and in the manner he did, that he was without authority and unwarranted in law in so doing."

He submitted the question of her right to recover for the articles of food which had become spoiled, but declined to submit plaintiff's claim for damages resulting from the interruption of her business due to her eviction.   Plaintiff reviews the judgment entered on the verdict in her favor for $75 by writ of error.   The assignments relate to the rulings of the court and the instruction that she could not recover damages for the injury to her business.

The tenancy created by the parol agreement, with the rent payable monthly, could have been terminated by defendant at any time by giving plaintiff a month's notice to quit, expiring on the day of the month the rent became due.   3 Comp. Laws 1915, § 11812;

*Haines* v. *Beach,* 90 Mich. 563.     He could have served
a demand for possession within seven days as pro-
vided for in section 13240, 3 Comp. Laws 1915, and,
in case the rent then due was not paid within that
time, he could have begun proceedings as therein pro-
vided to recover possession.     He did neither of these
things.     His acts in fastening the outer door and
causing the light and water to be shut off amounted to
a constructive eviction of the plaintiff.     16 R. C. L.
p. 688; *Dunton* v. *Sweet,* 210 Mich. 525; *Lawrence* v.
*Rapaport,* 213 Mich. 358.     The statute provides an
adequate remedy in such cases, and should be resorted·
to.     Had the defendant been able to peaceably obtain
possession, a different question would be presented.
The acts by which he compelled plaintiff to abandon
the premises were unlawful and tortious, and must be
regarded as a forcible expulsion of her by him.     The
instruction of the trial court that what he did "was
without authority and unwarranted in law" was fully
justified.

Counsel do not contend that, when a tenant's busi-
ness has been broken up by an unlawful ouster by the
landlord, he may not recover damages therefor.     The
question here presented is whether loss of profits may
be considered as an element of such damages.     In
actions on contract, where the profits are in their
nature contingent on opportunity, successful opera-
tion, and other uncertain happenings, courts have been
loath to allow them to be considered as elements of
damage, although, in certain cases, where found to
have been in contemplation of the parties, the jury
have been permitted to consider them with the other
proof submitted in determining the just compensation
to which plaintiff was entitled.     *Fell* v. *Newberry,* 106
Mich. 542; *Industrial Works* v. *Mitchell,* 114 Mich.
29, 34; *Quay* v. *Railway Co.,* 153 Mich. 567 (18 L. R.
A. [N. S.] 250).

The holding, however, in this State, has been quite uniform that in an action of tort such as we have here a more liberal rule will be applied.   When the amount of profit lost by the wrongful act of a landlord can be shown with reasonable certainty, and is not so remote, speculative or contingent as to form no reliable basis for a determination as to loss, evidence of the profits gained in the conduct of a business and the probability of their continuance, had not the business been interrupted by the ouster, may be shown and may constitute a measure by which, in addition to any other relevant facts which may be established, the damages sustained by the interruption of the business may be fixed.   The jury should be instructed that the past profits may not be taken as the exact measure of future profits, but may be considered and allowed such weight as they may be found to be entitled to, in arriving at a fair compensation for the loss sustained.

What has been said is but a synopsis of the exhaustive opinion written by Mr. Justice CHRISTIANCY in *Allison* v. *Chandler*, 11 Mich. 542.   We have used the language employed by him quite freely without quoting it.   This decision has, we think, been quoted from and cited approvingly by this and other courts and text-book writers more often than any other which appears in our reports.   The Michigan cases appear in the footnote.[1]   The reasoning in the recent case of

[1]*Burrell* v. *Solar Salt Co.*, 14 Mich. 34; *Warren* v. *Cole*, 15 Mich. 265; *Gilbert* v. *Kennedy*, 22 Mich. 117; *Clark* v. *Ice Co.*, 24 Mich. 508; *Welch* v. *Ware*, 32 Mich. 77; *Winchester* v. *Craig*, 33 Mich. 205; *Haynes* v. *Knowles*, 36 Mich. 407; *Friend* v. *Dunks*, 37 Mich. 25; *Hamilton* v. *Smith*, 39 Mich. 222; *Thompson* v. *Ellsworth*, 39 Mich. 719; *Tracy* v. *Butters*, 40 Mich. 406; *Russell* v. *Phelps*, 42 Mich. 377; *McKinnon* v. *McEwan*, 48 Mich. 106 (42 Am. Rep. 458); *Ives* v. *Williams*, 50 Mich. 100; *Hitchcock* v. *Pratt*, 51 Mich. 263; *Watson* v. *Watson*, 53 Mich. 168 (51 Am. Rep. 111); *Stilson* v. *Gibbs*, 53 Mich. 280; *Ayres* v. *Hubbard*, 57 Mich. 322 (58 Am. Rep. 361); *Aber* v. *Bratton*, 60 Mich. 357; *Baumier* v. *Antiau*, 65 Mich. 31; *Webber* v. *Barry*, 66 Mich. 127

*Raniak* v. *Krukowski,* 226 Mich. 695, is instructive.
There are authorities which hold otherwise.    16 R.
C. L. p. 698, and note; Ann. Cas. 1912A, 859.    The
reason for such holding is based on the fact that the
past profits may have been unusually large or affected
by exceptional circumstances.    There is always op-
portunity to develop such fact on cross-examination.
As before stated, the amount of past profits is not con-
clusive; it is but an element to be considered by the
jury under cautionary instructions as to the use to
be made of it.

Counsel rely on *Marsh* v. *Bristol,* 65 Mich. 378;
*Murphy* v. *McIntyre,* 152 Mich. 591, and *McIntyre* v.
*Murphy,* 153 Mich. 342 (15 Ann. Cas. 802), in support
of the instruction given.    In the *Marsh Case* it ap-
peared that Bristol had obtained possession peaceably.
The injuries for which plaintiff claimed damages were
those sustained by him in an attempt to regain pos-
session.    The distinction between a forcible entry and
a forcible detainer was clearly pointed out.    In the
*McIntyre Cases* it was said that under the facts there
appearing the holding over of the tenant "was clearly
a holding without right.   *   *   *   The vendor might
have at once peaceably dispossessed her."    The dam-
ages due to the forcible entry were said to be those "re-
sulting to herself and to her property by the wrongful
conduct of the defendant and those were the damages
which she recovered in this case."    No question of

(11 Am. St. Rep. 466); *Conlon* v. *McGraw,* 66 Mich. 194; *Cooney*
v. *Chase,* 81 Mich. 203; *Wood* v. *Railroad Co.,* 81 Mich. 358;
*Haines* v. *Beach,* 90 Mich. 563; *Commissioners of Parks* v.
*Moesta,* 91 Mich. 149; *Oliver* v. *Perkins,* 92 Mich. 304; *Burtraw*
v. *Clark,* 103 Mich. 383; *Church* v. *Anti-Kalsomine Co.,* 118
Mich. 219; *Hart* v. *Village of New Haven,* 130 Mich. 181; *City
of Detroit* v. *C. H. Little Co.,* 141 Mich. 637; *Krzyszke* v. *Kamin,*
163 Mich. 290; *Robinson* v. *Telegraph Co.,* 169 Mich. 503; *Eesley
Light & Power Co.* v. *Commonwealth Power Co.,* 172 Mich. 78;
*City of Kalamazoo* v. *Standard Paper Co.,* 182 Mich. 476; *Feld-
man* v. *Wear-U-Well Shoe Co.,* 191 Mich. 73.

loss by injury to business was presented or considered.

We find it a little troublesome to determine the length of time for which the damages incident to the interruption of plaintiff's business may be allowed. In *Allison* v. *Chandler, supra,* they were limited to the unexpired portion of the leasehold term. Plaintiff's right of occupancy might have been terminated on June 1, 1922, by a notice to quit if given at the time of her eviction. In *Shaw* v. *Hoffman,* 25 Mich. 162, it was said that an eviction of the tenant and retention of the possession of the property leased by the landlord was the equivalent of a notice to quit. While it may be urged that, if such a notice had been given, plaintiff might have prevented the loss which followed her summary eviction by securing other premises and thus retaining her trade, we feel that no injustice is done to her in so holding, owing to her testimony that, although she had made an effort to do so, she was unable to secure other premises until the following December. Her damages should therefore be limited to such as were sustained by her prior to June 1, 1922.

The judgment is reversed, with costs to appellant, and a new trial ordered.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.