## BROOKS et al. v. FEDERAL SURETY CO.

Court of Appeals of District of Columbia.

Submitted February 8, 1928. Decided March 5, 1928.

No. 4613.

Sales ⟨key⟩ I (3)—Contract for sale of coal, stipulating that price should be resale price less 10 per cent., held unenforceable.

Contract for sale of coal, providing that price should be price at which buyer should sell it less 10 per cent., *held* unenforceable, on ground that price was not determined, and no method was agreed on for establishing it, notwithstanding rule that buyer would not be permitted to make fraudulent sales for price-fixing purposes.

Appeal from the Supreme Court of the District of Columbia.

Action by Amsbry M. Brooks and others, a partnership trading as Brooks, Smith & Coane, Limited, against the Federal Surety Company and another, in which the cause proceeded against the named defendant as sole defendant. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. H. Covington, Spencer Gordon, and F. C. Bradley, all of Washington, D. C., for appellants.

E. S. Bailey, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. The appellants, Brooks, Smith & Coane, as plaintiffs below, sued the Lorberry Coal & Mining Company, as principal, and the Federal Surety Company, as surety, for damages because of an alleged breach by the mining company of a written contract between it and plaintiffs for the sale of a certain quantity of mined coal. The surety company alone was served with process, and the cause proceeded against it as sole defendant. At the trial the lower court directed a verdict for the defendant, and judgment was entered thereon. This appeal followed.

The controlling question in the case is whether the written contract sued upon was void for want of a definite agreement by the parties fixing the price of the coal sought to be sold, or providing a method by which the price could be judicially ascertained. The answer to this question is to be found in the proper interpretation of the written contract itself.

The declaration averred that by the terms of the contract the mining company was to sell and deliver to plaintiffs 25,000 tons of fresh mined anthracite coal of specified grades, deliveries to be completed within three months thereafter, and that plaintiffs were to buy and receive the same, and were to pay for all coal shipped and accepted during any month the price which they received for all coal sold during that month, without any deductions except a commission of 10 per centum of the sale price per ton. It was also alleged that the surety company had guaranteed the faithful performance of this contract by the mining company. The declaration averred that plaintiffs thereupon gave the mining company orders for the shipment of various cars of coal according to the contract, and that the company utterly failed and refused to perform the contract or to deliver any coal to plaintiffs thereunder; that, had the coal been delivered as agreed in the contract, plaintiffs could readily have sold it at the prevailing market prices during the period covered by the contract in the total sum of $223,827.90, at a profit of 10 per

cent., or, to wit, $22,382.79; and plaintiffs prayed judgment for damages in that sum.

It is plain that the contract in question was a contract of sale, and not one for service. Mechem on Sales, § 43. It was executory, and no delivery of coal was ever made under it. Such a contract is not valid, unless the price of the thing sold is determined upon by the parties themselves, either expressly or impliedly, or some means or method be agreed upon by the parties, or established by law, by which the price may be determined. Mechem on Sales, § 204. The parties to the present contract did not themselves agree upon the price of the coal sought to be sold, but they agreed that the price should be the same price (less 10 per cent.) as that for which plaintiffs should sell the coal. Plaintiffs contend that this was a valid method for the determination of the price of the coal sought to be sold under the contract.

We are constrained to disagree with this view. According to the provisions of the contract, the coal, when delivered to plaintiffs, would become their exclusive property. The mining company then would have no control over it, nor over the price for which plaintiffs might sell it. The plaintiffs would be entitled to accept any price for it satisfactory to themselves, and in effect the transaction would be the same as if the mining company had agreed to sell and deliver the coal to plaintiffs, leaving it to them alone to determine the price to be paid for it. Such an agreement lacks mutuality, and cannot be enforced.

In Foster v. Lumbermen's Mining Co., 68 Mich. 188, 36 N. W. 171, the court says: "An agreement for the sale of a quantity of iron ore, for a price per ton dependent upon that received by the vendee on its sale, lacks an essential ingredient of a contract of sale, and cannot be enforced."

In Weston Paper Mfg. Co. v. Downing Box Co., 293 F. 725, it is held by the Circuit Court of Appeals, Seventh Circuit, that a contract for the sale of a large quantity of strawboard, to be delivered in monthly installments throughout a year, which authorized seller to fix the price for each three months' deliveries in advance, though it provided that such price "shall be the seller's market price then existing," is too indefinite to constitute a valid contract enforceable against the buyer. The court said:

"Plaintiff asserts, and the defendant denies, the validity of a sales agreement where the 'market price' is determined, as here, by the seller. In fact it is urged that such a provision is not a 'market price' in any proper sense of the term, but is the seller's price, and brings the case squarely within the rule, announced in many cases, to the effect that an agreement which leaves the price to be fixed by the seller is too indefinite to be enforced and is void. Williston on Sales, §§ 37, 43, 464; Cold Blast Transportation Co. v. Kansas Bolt & Nut Co., 52 C. C. A. 25, 114 F. 77, 57 L. R. A. 696; American Cotton Oil Co. v. Kirk, 15 C. C. A. 540, 68 F. 791; Crane v. C. Crane Co., 45 C. C. A. 96, 105 F. 869; United Press v. New York Press Co., Ltd., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288; Hoffman v. Maffioli, 104 Wis. 630, 80 N. W. 1032, 47 L. R. A. 427; Joliet Bottling Co. v. Joliet Citizens' Brewing Co., 254 Ill. 215, 98 N. E. 263; Velie Motor Car Co. v. Kopmeier Motor Car Co., 114 C. C. A. 284, 194 F. 324.

"Plaintiff, contending that the contract should be construed, if possible, so as to uphold it, insists that it is neither unilateral nor uncertain, but governed by the maxim, 'Id certum est quod certum reddi potest.' McConnell v. Hughes, 29 Wis. 537; Parker v. Adams, 47 Vt. 139; Matthews Glass Co. v. Burk, 162 Ind. 608, 70 N. E. 371; Lund v. McCutchen, 83 Iowa, 755, 49 N. W. 998; Solter v. Leedom Co., 164 C. C. A. 245, 252 F. 133. While so recognizing the rule for which plaintiff contends, we are unable to apply it to the facts in this case. We see nothing in this contract which takes from the seller the absolute right to fix the price in the future. Certainly defendant had no voice in fixing this price. Nor did any third party have any immediate influence upon plaintiff in determining the price. True, plaintiff may, in acting, have been governed by a desire to hold future business, or have been prompted by other laudable motives. But plaintiff could have arbitrarily changed the price each quarter, and from such arbitrary fixation defendant had no appeal. Upon the ground of uncertainty, and also for want of consideration, we conclude the agreement as drawn was unenforceable."

The contract in the instant case does not stipulate that the price of the coal shall be governed by the market price thereof, and the court cannot import such a provision into the contract. It is true that the plaintiffs would not be permitted to make fraudulent sales for price-fixing purposes, but that rule cannot take the place of an agreement of the parties in regard to price.

We need not refer to the numerous authorities cited by the parties, all of which

have been examined by us, for we are convinced that the judgment of the lower court was right.

It is affirmed, with costs.