Freiburger, Appellant, vs. The Texas Company, Respondent.

*November 9—December 4, 1934.*

For the appellant there was a brief by *McGovern, Curtis & Devos* of Milwaukee, and oral argument by *H. K. Curtis* and *Francis E. McGovern.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

NELSON, J.    The facts material to a determination of this controversy are not in dispute.   On or about August 7, 1931, the plaintiff entered into a so-called "service station agency contract" with the defendant, The Texas Company, a foreign corporation authorized to do business in this state, wherein and whereby The Texas Company appointed the plaintiff as its agent at a certain service station belonging to it.   That contract provided:

"V. This contract shall remain in force until terminated by either party upon five days' prior written notice; but the

company reserves the right at any time to cancel the contract forthwith in event the Agent, in the Company's judgment, does not fully perform his obligations hereunder."

At about the same time the plaintiff and defendant entered into a so-called "license agreement" wherein and whereby the plaintiff was licensed and permitted "to enter upon, use and occupy for the purposes and on the conditions set forth the following described property: . . . One open concrete greasing pit and one grease rack situated in and forming a part of the service station located on the following described premises. . . ." The greasing pit, etc., were located upon the premises described in the agency contract as No. 3592 North Oakland avenue. The license agreement contained the following provisions:

"(2) This license shall continue for the term of Four (4) Yrs. Four (4) Mos. Twenty-one (21) Days from and after the 7th day of August, 1931, but subject to termination by licensor at the expiration of the first month or any subsequent monthly period by five days' prior written notice from licensor to licensee.

"(3) . . .

"(4) . . .

"(5) Cancellation. Licensor may, at any time cancel and terminate this license forthwith in event of (1) termination or failure of consummation of a certain sales contract now in force or being negotiated between the parties hereto or any agreement in continuation thereof or in substitution therefor; . . . (4) licensee's failure to conduct the business on the licensed premises with due diligence in the judgment of the licensor; . . . (6) licensee's failure to maintain the premises as hereinafter provided; . . . (8) the licensee's failure to fully perform any and/or all of the obligations herein stipulated on his part to be performed."

It clearly appears that the agency contract was for no definite term, but was to remain in force until terminated by either party upon five days' prior written notice. The license

agreement, however, was to continue for a definite term unless terminated or canceled by the licensor as therein provided.

The plaintiff commenced to operate the service station pursuant to the agency contract and also the greasing pit and greasing rack pursuant to the license agreement, and continued so to do until July 9, 1932, when one of the defendant's supervisors of service stations, without prior written notice given to the plaintiff by the company, terminated the agency and license agreements by entering into and taking immediate possession of the station, the greasing pit, and grease rack. An inventory of the merchandise belonging to the plaintiff was taken and settlement made therefor. The company sought to justify its taking immediate possession of the station without giving the five days' written notice of termination of the contract under paragraph V of the agency contract which provided that "the company reserves the right at any time to cancel the contract forthwith in event the agent, in the company's judgment, does not fully perform his obligations hereunder." The company also sought to justify its termination of the license agreement without giving the written notice as provided by that agreement under paragraph V thereof, which permitted the company to cancel and terminate the license forthwith at any time in the event of the "licensee's failure to conduct the business on the licensed premises with due diligence in the judgment of the licensor." Trial was had to the court and a jury. The jury returned a special verdict which found: (1) That in taking possession of the premises the defendant's agents acted arbitrarily or capriciously or without good faith; (2) that the prospective profits lost by the plaintiff from July 9, 1932, to December 28, 1935, amounted to $6,734.32; (3) that the prospective profits lost by the plaintiff from July 9, 1932, to the end of the five days thereafter amounted to $26.25; and which assessed punitory damages at the sum of $1,500. The plaintiff's mo-

tion for judgment on the verdict for $8,234.32 was denied. All of the defendant's alternative motions, except the one that judgment be entered against the defendant for the sum of $26.25 damages, were overruled. Judgment in favor of the plaintiff for $26.25 and costs was thereafter entered.

The plaintiff assigns as errors: (1) The denial of plaintiff's motion for judgment on the verdict for the sum of $8,234.32; (2) the granting of defendant's motion for judgment in favor of the plaintiff for the sum of $26.25 and costs.

Although numerous contentions are made by the plaintiff, we are of the opinion that this appeal presents a rather narrow question for determination. Under a contract which may be terminated without cause by either party on written notice, but which is terminated without notice, may a recovery be had for prospective losses beyond the period in which the contract might have been terminated by giving the written notice specified? It is clear that the agency contract was subject to termination by either party on five days' prior written notice. It is also clear that the license agreement was subject to immediate cancellation by the licensor "in event of termination . . . of a certain sales contract now in force or being negotiated between the parties." There were but two agreements entered into, so the "sales contract" referred to in the license agreement was unquestionably the service station agency contract. Either party might terminate the service station agency contract upon five days' prior written notice and thereupon cancel the license agreement forthwith. Whatever may be said regarding the shortness of the time in which the agreements could be terminated is quite immaterial, since that was the specific agreement entered into. When contracts that are terminable at any time on notice are terminated forthwith and without notice, the damages which an aggrieved party may recover are limited to the notice period.

In *Chevrolet Motor Co. v. McCullough Motor Co.* 6 Fed. (2d) 212, 214, decided May 25, 1925, by the circuit court of appeals of the Ninth circuit, a case which involved an exclusive representation for the sale of Chevrolet automobiles in a designated territory under a contract which provided that either party might cancel it by giving five days' written notice to the other but which contract had not been so terminated, it was said:

"It seems reasonable to hold, however, that there could be no recovery, other than for nominal damages for breach of a contract which was subject to cancellation by either party upon 5 days' notice, and that in the case at bar the plaintiff could not, by reason of the defendant's breach, acquire rights greater than those which the contract gave it. In Sedgwick on Damages (9th ed.), § 668, it is said: 'When the contract is terminable at any time on notice, and the servant is discharged without formal notice, the discharge is to be regarded as notice, and he may recover wages up to the time of discharge, but only nominal damages for the discharge.' "

The same conclusion was reached in *Louisiana Oil Corp. v. Bryan,* 165 Miss. 157, 147 So. 324, which involved a contract terminable upon ten days' written notice; in *Stolz v. Wells* (Tex. Civ. App.), 43 S. W. (2d) 163, 164, which involved a contract of employment for one year from January 1, 1930, to December 31, 1930, "unless sooner terminated by either party giving the other written notice thirty days in advance of such termination;" in *Bryant & Stratton Business College v. Walter,* 155 Ky. 707, 160 S. W. 241, which involved a contract of employment for four months at $75 per month, but terminable upon one week's notice by either party; in *Watson v. Russell,* 149 N. Y. 388, 44 N. E. 161, which involved a contract that was terminable upon two weeks' notice. See also *Derry v. Board of Education,* 102 Mich. 631, 61 N. W. 61, and other cases cited in the note in 35 A. L. R. 896, and in 18 R. C. L. p. 523, and 39 C. J. p. 111, and cases

there cited. In *Kuebler v. Two Rivers, ante,* p. 428, 257 N. W. 591, it was held that the plaintiff could recover such wages as she would have earned prior to the effective date of termination. However, in that case the stipulated notice was given. In *Bryant & Stratton Business College v. Walter, supra,* it was said:

"In the present case defendant had the right at any time to terminate the contract by giving plaintiff one week's notice. Where by its terms a contract of employment may be terminated at any time upon giving a specified notice, the damages for a wrongful discharge can be no more than the wages which would have accrued under the contract after the notice, had one been given."

See also 2 Sedgwick, Damages (9th ed.), p. 1354, § 668, and 19 R. C. L. p. 533.

It is our conclusion that the plaintiff's damages were properly limited by the trial court to the five days immediately following the taking over of the station, etc., by the defendant.

The plaintiff contends that the license agreement was not in fact a license but a lease. In our opinion the contention is without merit. The license agreement, by its express terms, applied only to the greasing pit and the greasing rack. It did not relate to the filling station proper. Looking to the language of the whole contract and applying it to the situation which existed at the time it was entered into, we find nothing in the contract that requires us to construe it as a lease. Whether it is a license or a lease would appear to be of no particular importance, since prospective profits for a period extending beyond the term of a lease or beyond the time when it, by its terms, may be terminated, are not recoverable. 36 C. J. p. 284; *Ludwigsen v. Larsen,* 227 Mich. 528, 198 N. W. 900; *Pappas v. Stark,* 123 Minn. 81, 142 N. W. 1046; *Ashley v. Warner,* 11 Gray (Mass.), 43; *Clark v. Groger,* 102 Wash. 188, 172 Pac. 1164; *Podren v. Macquarrie,* 233 Mass. 127, 123 N. E. 335.

The plaintiff further contends that since the defendant terminated the contracts, purporting to act under the forthwith provisions, it thereby made an election of remedies and cannot now be permitted to say that the agreements were effectively terminated five days thereafter. We think the doctrine of election of remedies has no application to the present situation. The present contracts were terminable without cause or without any ground for termination upon five days' prior written notice. The rule applicable to such situation is stated in 2 Sedgwick, Damages (9th ed.), p. 1354, § 668, as follows:

"When the contract is terminable at any time on notice, and the servant is discharged without formal notice, the discharge is to be regarded as notice, and he may recover wages up to the time of the discharge, but only nominal damages for the discharge."

The cases hereinbefore cited are to the same effect.

We have given careful consideration to the plaintiff's other contentions. We find nothing in them which alters our conclusion.

*By the Court.*—Judgment affirmed.