## BUGGS v. FORD MOTOR CO.
### No. 6975.

Circuit Court of Appeals, Seventh Circuit.
June 28, 1940.

Jacob Geffs, of Janesville, Wis., for appellant.

Carl Muskat, of Milwaukee, Wis., and Clifford B. Longley and Wallace R. Middleton, both of Detroit, Mich., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

**EVANS, Circuit Judge.**

The legal questions argued on this appeal are many. Fortunately the factual issues are fewer and less controverted.

The Facts: Plaintiff alleges that he has held a Ford dealer franchise in Janesville, Wisconsin, since October, 1913; that the franchise has been renewed from time to time; the last renewal bears date of May 26, 1932; that he has equipped his garage to handle efficiently this agency and has expended $7600 in building a warehouse necessary for the assembling of Ford cars. He has purchased Ford parts, expended money and efforts in building up Ford trade believing that he would have the agency permanently; that he has put in over twelve hours a day in the work and has expended over $100,000, in building up the business. The contract of May 26, 1932, was a Ford standard dealer agency contract and contained a provision for termination as above stated. The defendant notified plaintiff, by registered mail, on September 25, 1937, that the agency was cancelled.

The defendant in its answer, in addition to claiming the absolute right to terminate, alleges that the plaintiff did not devote adequate time or attention to the agency, and alleges that it did not violate the subsections of the Wisconsin Statute—which statute it contends is not applicable, first, because it is not retroactive and second, because it grants plaintiff no cause of action for money damages.

Defendant moved for a summary judgment and supported its motion with affidavits of its officers setting forth its corporate set-up; the location, number of its

agents, the volume of its business, its advertising methods and other facts which disclosed its policies and practices in reference to dealer agencies throughout the country.

The District Court granted defendant's motion; it made findings of fact and conclusions of law; dismissed the plaintiff's complaint on its merits. It made no finding on the constitutionality of the Wisconsin Statute. The court found the contract of May 26, 1932, to be a valid one, and gave to the defendant the lawful right to terminate the contract at any time without subjecting itself to liability for damages therefor. It also held that the statute had no retroactive effect; and that the statute created no cause of action for damages for violation thereof.

The legal questions are:

1. Is the Wisconsin statute (Wis.Stats. 218.01 (3) (a) 17) valid? Is it retroactive?

2. Is one aggrieved by the inexcusable cancellation of his dealer's contract entitled to maintain an action for damages because of this statute which provides for cancellation of the manufacturer's right to do business in the State of Wisconsin in case it inexcusably and unjustifiably cancels a dealer's agreement?

3. Was the last written agreement between plaintiff and defendant invalid because unilateral?

4. If invalid, were there valid contractual obligations binding on the parties on September 22, 1937, which made applicable the aforesaid Wisconsin statute?

Most sharply controverted is the question of the validity of the contract. Plaintiff contends that it lacks mutuality. In short, it is unilateral.

An examination of its terms, which are many, indicates that it was dictated by the manufacturer at Detroit, and drawn by its counsel with the avowed purpose of protecting the manufacturer to the utmost and granting, if any, few rights to, and the smallest possible protection of, the agent.

It is one which affords some support for the wisdom and the necessity of legislation which protects the weak against a strong party in situations like the instant one. The terms of this and other similar agreements had, no doubt, a causal bearing upon the passage of the legislation which the State of Wisconsin enacted in 1937. It cannot be ignored in considering the validity of such legislation.

Similar contracts have been before the courts on many occasions, and there are numerous decisions, entitled to weight and respect, which hold these contracts to be void for lack of mutuality. The case which most strongly supports plaintiff's position is Ford Motor Company v. Kirkmyer Motor Co., 65 F.2d 1001, a decision by the Circuit Court of Appeals of the Fourth Circuit. This decision in turn relies on Huffman v. Paige-Detroit Motor Car Co., 8 Cir., 262 F. 116. Likewise, two decisions of this court, Velie Motor Car Co. v. Kopmeier Motor Car Co., 7 Cir., 194 F. 324, and Oakland Motor Car Co. v. Indiana Automobile Co., 7 Cir., 201 F. 499, join in condemning agreements which are loaded with express obligations of one side and silent as to the obligations of the manufacturer. Jordan v. Buick Motor Co., 7 Cir., 75 F.2d 447, is another case (by this court) which followed the above-cited cases, and found the agreement there set forth to lack mutuality. Cited below are many cases which contain discussions of this question.[1]

Such disagreement as seemingly exists in the decisions may be partly attributed to the differences in the terms of the agreements under attack.

▮ We are convinced that the agreement before us is not unilateral and is valid.

[1] Chevrolet Motor Co. v. McCullough Motor Co., 9 Cir., 6 F.2d 212; Freiburger v. Texas Co., 216 Wis. 546, 257 N.W. 592; Erskine v. Chevrolet Motors Co., 185 N.C. 479, 117 S.E. 706, 32 A.L.R. 196; Bendix v. Staver Carriage Co., 174 Ill.App. 589; Chevrolet Motor Co. v. Gladding, 4 Cir., 42 F.2d 440; 32 A.L.R. 209; Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251; Case Note, 45 Harvard Law Review, page 378; Williston on Contracts, Sec. 1027 A; Bliss Furn. Co. v. Norris, 129 Mich. 11, 87 N.W. 1041; Wilkinson v. Heavenrich, 58 Mich. 574, 26 N.W. 139, 55 Am.Rep. 708; Bastain v. J. H. Du Prey Co., 261 Mich. 94, 245 N.W. 581; Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167, 170; Brooks v. Fed. Surety Co., 58 App. D.C. 56, 24 F.2d 884, 57 A.L.R. 745; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno, 8 Cir., 64 F.2d 224, 89 A.L.R. 238; Ellis v. Dodge Bros., 5 Cir., 246 F. 764.

Going at once to the most important paragraphs of the contract and the ones upon which defendant must chiefly rely to support its contention that the agreement is valid, we find the following:

"(1) Company agrees to sell and Dealer agrees to purchase Ford automobiles, * * * accessories and parts (hereinafter sometimes collectively referred to as Company's 'Products') upon the terms, conditions and provisions hereinafter specifically set forth and subject to the right reserved to Company to sell to other Dealers and direct to retail purchasers in any part of the United States without obligations for any commission to Dealer on any such sale.

"(2) Company will sell its products to Dealer f. o. b. Detroit, Michigan, at such net list price, or at such discounts from published list prices as are from time to time fixed by Company. * * *

"* * *

"(5) 'List Prices' of all Ford products shall be subject to change at any time and from time to time without obligation on Company to adjust with Dealer as to price of any product shipped, or paid for but not in transit, at the time such price change becomes effective.

"* * *

"(9) It is further mutually agreed that:
"Estimates

"(a) Dealer will furnish Company on Company forms, prior to December 31st of each year, an estimate of the number of Ford automobiles, trucks, cabs and chassis that Dealer will purchase from Company during each month of the succeeding year. Company agrees to give careful consideration to such estimates, but expressly reserves the right to follow or depart from such estimates according to its discretion. Company shall in no way be liable for any delay in shipments, however caused, nor for shipments over other than specified route.

"* * *

"(c) This agreement may be terminated at any time at the will of either party by written notice to the other party given either by registered mail or by personal delivery, and such termination shall also operate to cancel all orders theretofore received by Company and not delivered.

"* * *

"(e) This is a Michigan Agreement and shall be construed according to the laws of the State of Michigan. If any provision of this agreement is held to be invalid or unenforceable, this contract shall as to such provision be considered divisible and the balance of the agreement shall be valid and binding."

For appellant it is contended that the agreement to sell does not definitely specify the prices at which the product would be sold. Moreover, he argues that the contract was terminable at any time.

Vital and determinative are paragraphs 1 and 2. The first obligates defendant to sell, but upon "terms, conditions and provisions hereinafter specifically set forth." These conditions and terms are set forth in paragraph 2, which provides defendant "will sell its products to plaintiff f. o. b. Detroit, Michigan at such net list price, or at such discounts from published list prices as are from time to time fixed by Company." This seems, under the authorities and on reason, sufficiently definite.

The parties had been dealing with each other prior to the execution of the last contract. They knew of the practices of each other. The dealer knew that automobiles were redesigned and new models appeared yearly and as a result prices changed at least seasonally. Defendant's business was nationwide and its agents were many. It was to this known situation that the contract referred. The parties negotiated with a background of past dealings and mutual knowledge of the practices of the trade. "The net list prices and discounts from published list prices" appearing in paragraph 2 were well known to both parties. These net list prices and published list prices were the same to all dealers. They changed as necessity required. They were not lacking in definiteness, but provided a method whereby the prices could be definitely ascertained at any time.[2]

Having reached the conclusion that the agreement was valid and binding and therefore subject to cancellation by either

[2] Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251; Memphis Furniture Mfg. Co. v. Wemyss Co., 6 Cir., 2 F.2d 428; Moore v. Shell Oil Co., 139 Or. 72, 6 P.2d 216; Moon Motor Car Co. v. Moon Motor Car, Inc., 2 Cir., 29 F.2d 3.

party upon the giving of written notice, the only remaining question is the effect of the Wisconsin statute upon such an existing contract.

We are convinced that the legislature did not intend to make its legislation, nor did the legislation, by its own terms, apply to and include existing contracts. We must give to it a construction which will avoid a successful attack on its unconstitutionality. Our conclusion is, therefore, that the Wisconsin statute in question did not apply to, or affect, existing valid contracts such as the one here in question.

It becomes unnecessary for us to consider the two other difficult and vexatious questions which appellant has raised.

The judgment is

Affirmed.