Argued at Pendleton October 27; affirmed December 15, 1931;
rehearing denied March 1, 1932

# MOORE *v.* SHELL OIL CO.

(6 P. (2d) 216)

*George T. Cochran,* of La Grande (Cochran & Eberhard, of La Grande, and Simon, Gearin, Humphreys & Freed, of Portland, on the brief), for appellant.

*Henry L. Hess,* of La Grande (Green & Hess, of La Grande, on the brief), for respondent.

KELLY, J. Twenty-three assignments of error are set forth in defendant's brief. The first assignment is, that the court erred in failing to grant defendant's motion for nonsuit. Seven reasons are advanced in support of such motion:

1. It is urged that plaintiff's failure to plead and prove his readiness and willingness to pay the contract price at the time and place of delivery is fatal to his right to recover. The amended complaint contains this allegation: That plaintiff "in all respects fully complied with his part of said contract and agreement in so far as he was allowed to do so by defendant." Upon issue joined, this is a sufficient allegation of waiver by defendant of performance by plaintiff: *Durkee v. Carr,* 38 Or. 189 (63 P. 117). When performance has been waived, an offer to perform is unnecessary: *Shaw Wholesale Co. v. Hackbarth,* 102 Or. 80, 91 (198 P. 908, 911, 201 P. 1066), and cases there cited. This issue of alleged waiver by reason of the fact that defendant notified plaintiff that further deliveries would not be made under the contract in suit was submitted to the jury.

2. Defendant asserts that the contract does not contain a promise by defendant to sell and hence it is unenforceable. We note the following excerpts from said contract: "Lessee (defendant) intends to make deliveries under this contract," etc. "All orders shall be filled with reasonable promptness," etc. "Deliveries are to be made in fairly equal monthly quantities at said place of business." The writer is unable to concur in defendant's belated assertion, that it did not agree to sell the commodity mentioned.

3. Defendant particularly stresses the contention, that the price was not definitely fixed, and, for that reason, the contract is invalid. To constitute a sale,

the price need not be definitely fixed at the time the sale is effected, if the agreement contains express or implied provisions by which it may be rendered certain: 23 R. C. L. 1278. There could be no uncertainty as to defendant's market price at North Powder. The contract expressly provides that the price to plaintiff should be four cents per gallon less than that.

We cannot concur with defendant in his statement that there could not possibly be any proof of what the full posted market price might be at any time during the term of the contract, even if the defendant should in the most capricious manner, and without assigning any reason therefor, fix an outlandish price for its gasoline and post the same as the posted full market price at its Baker depot. Whatever may be said as to the right in any view of the case, of the defendant to do such a thing, certainly, nothing would prevent the parties, the court, or the public, from ascertaining definitely, certainly and exactly, what that price might be when so posted.

*Weston Paper Manufacturing Co. v. Downing Box Co.*, 293 Fed. 725, is a case, cited by the defendant, wherein a contract is construed which involved 900 tons of standard corrugating strawboard. There, it was agreed that the "Price: Shall be fixed by the seller on or before December 15, 1920, for the first three months' shipments, beginning January 1, 1921. Seller shall give the buyer notice, in writing, on or before the fifteenth (15th) day of third month thereafter, of the price for the tons to be shipped the ensuing three months' period, which price shall be the seller's market price then existing under this the seller's standard form of quarterly price fixing contract."

The writer thinks that there is a distinction between that case and the case at bar in the fact that the posted

price of gasoline is necessarily strongly influenced, if not absolutely controlled, by the posted prices of competing producers; and in the further fact that the method of its distribution and sale is entirely dissimilar from that of corrugating strawboard. In the case cited, the court comments on the fact that no third party had any immediate influence upon plaintiff in determining the price of its strawboard. That certainly cannot be said of gasoline today, whether of the variety produced by defendant, or that of its competitors. Strawboard is not marketed to such numbers of people as to make it as common, and its price as well known, as that of wheat, potatoes or prunes. If, however, there is no distinction between this case and the one at bar, the writer is not in harmony with the doctrine of the case cited.

*Jensen v. Turner Bros.*, 16 S. W. (2d) 742, also cited by defendant, is an action for the alleged conversion of a quantity of corn. The point here considered is presented by the comments of the court upon the failure of the testimony, in behalf of plaintiff, to support his allegations that there was a contract for a future sale to defendants. In this connection it is there said: "If it were a present sale for a price to be determined by future conditions or at a future date, this date must be designated or a time limit set, or a reasonable time understood." In the case at bar, the question of the date, when the defendant's market price less four cents per gallon would govern, is not in question. The parties to the contract have given a practical construction of the contract in that regard by operating thereunder, the defendant making delivery and the plaintiff making payment on the basis of defendant's posted market price at time of delivery.

*Brooks v. Federal Surety Co.,* 58 App. D. C. 56 (24 Fed. (2d) 884), also cited by defendant, involves the construction of a contract providing that a mining company was to sell and deliver to plaintiffs a certain quantity of anthracite coal, deliveries to be completed within three months, and plaintiffs were to pay for all coal shipped and accepted during any month the price which they received for all coal sold during that month, without any deductions except a commission of 10 per centum of the sale price per ton. No delivery of any coal was ever made under this contract. The distinction between that case and the one at bar lies in the fact that there the plaintiffs alone could determine the price to be paid for the particular quantity of coal affected by the agreement. In the case at bar, if we give any value to the word "market" in the phrase defendant's "full market price," we must conclude that it means the price quoted publicly, not alone upon the particular gasoline plaintiff might purchase but upon the entire stock of defendant's product. Both plaintiff and defendant introduced testimony to the effect that the full market price as posted, was the retail market price of the gasoline.

 4. Defendant urges that the contract in suit is void, because it leaves performance thereof to the will or wish of one of the parties. *Tweedie Trading Co. v. Parlin & Orendorff Co.,* 204 Fed. 50, also cited by defendant, holds that a contract of affreightment is unilateral which requires defendant to furnish for shipment from 150 to 200 carloads of farm implements within the ensuing year, and plaintiff to transport the same in its vessels from New York to certain South American ports at rates of freight specified therein, and provides that the "bulk" of the shipments shall be subject to plaintiff's call during a specified three

months of the year terminating ten days before its expiration. The reason assigned for this holding is that the contract leaves the defendant without the right to require the carriage of any definite quantity at any time during the year, unless within the last ten days.

In the case at bar, it will be noted that the contract expressly provides: "Deliveries are to be made in fairly equal monthly quantities at said place of business." It also contains a reservation, on the part of defendant, to refuse to deliver in any one month a greater quantity of gasoline than a monthly pro rata of the estimated maximum requirements of plaintiff for any twelve months period, which estimated maximum is fixed in the contract at 78,000 gallons.

*Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co.,* 114 Fed. 77 (57 L. R. A. 696), also cited by defendant, construes a contract "to deliver manufactured articles in unnamed quantities" at certain specific prices. There was "no averment that either the plaintiff or the defendant paid any consideration or performed any act to induce the contract, except the remitting of the offer by the plaintiff, and the sending of its acceptance by the defendant." The plaintiff did not agree to deliver, nor did the defendant contract to receive, or pay, for any quantity or amount whatever of the articles named in the writings.

In the case at bar, it is expressly stipulated in the contract, "that the lessor (plaintiff) will purchase 100 per cent of his gasoline, Western Oils and grease requirements from the lessee (defendant), and will stock a full line of Golden Shell oils; and will not sell or permit to be sold upon said premises any other gasoline, lubricating oil or grease other than the products of the lessee (except Eastern Oil)." It is also

stipulated that plaintiff shall not display on said premises any sign, fixing or offering gasoline for sale at a price less than defendant's full market price. There are also provisions giving to defendant the exclusive right to use the surface of the buildings and fences for advertising and the surface and subsurface of the ground for storage of gasoline and other motor fuels.

*International Shoe Co. v. Herndon,* 135 S. C. 138 (133 S. E. 202, 45 A. L. R. 1192), also cited by defendant, construes a parol agreement giving defendant the exclusive right to sell shoes at Walterboro, manufactured by plaintiff. Mr. Justice Cothran, speaking for the court, says:

"It will be observed that this alleged engagement is not only indefinite as to time, quantity, price and terms, but it is accompanied by no corresponding engagement on the part of the defendant; he binds himself to nothing; he could, under it, order one or a thousand pairs of shoes, or none at all; at a price unknown, not agreed upon, and upon indefinite terms."

*Wickham & Burton Coal Co. v. Farmers' Lumber Co.,* 189 Iowa 1183 (179 N. W. 417, 14 A. L. R. 1293), also cited by defendant, holds that an agreement to furnish a purchaser as much coal as he "would want to purchase" from seller is unenforceable, for want of mutuality, so far as it remains executory. Mr. Justice Salinger, speaking for the court, says:

"In the last analysis the counterclaim is based on the allegation that plaintiff undertook to furnish defendant such described coal 'as defendant would want to purchase from plaintiff.' The defendant never 'accepted.' Indeed, it is its position that it gave orders, and that plaintiff did the accepting. But concede for argument's sake, that defendant did accept. What was the acceptance? At the utmost, it was a consent that

plaintiff might ship it such coal as defendant 'would want to purchase from plaintiff.' What obligation did this fasten upon defendant? It did not bind itself to buy all it could sell. It did not bind itself to buy of plaintiff only.''

In the case at bar, plaintiff did bind himself to buy all he could sell of gasoline and to buy of plaintiff only.

In *Schlegel Mfg. Co. v. Peter Cooper's Glue Factory,* 231 N. Y. 459 (132 N. E. 148, 24 A. L. R. 1348), also cited by defendant, the New York Court of Appeals construed a letter written by defendant to plaintiff offering to enter plaintiff's contract for glue for the year 1916, at 9 cents per pound and its written acceptance. Concerning the same, Mr. Justice Mc-Laughlin, speaking for the court, says:

''The plaintiff at the time was engaged in no manufacturing business in which glue was used or required, nor was it then under contract to deliver glue to any third parties at a fixed price or otherwise. It was simply a jobber, selling, among other things, glue to such customers as might be obtained by sending out salesmen to solicit orders therefor. * * *

''Mutual promises or obligations of parties to a contract, either express or necessarily implied, may furnish the requisite consideration. The defect in the alleged contract here under consideration is that it contains no express consideration, nor are there any mutual promises of the parties to it from which such consideration can be fairly inferred. The plaintiff it will be observed, did not agree to do or refrain from doing anything. It was not obligated to sell a pound of defendant's glue or to make any effort in that direction. It did not agree not to sell other glue in competition with defendant's. The only obligation assumed by it was to pay 9 cents a pound for such glue as it might order.''

This defect, which is so clearly and yet so concisely pointed out, does not appear in the case at bar. First, plaintiff was engaged in a business in which gasoline was required. Second, he was not simply a jobber. Third, in the contract in suit, there are mutual promises on the part of each of the parties to it. Fourth, the plaintiff did agree to sell defendant's products, and to refrain from selling any other gasoline. This clearly distinguishes the New York case last cited from the case at bar.

In the case of *Cohen et al. v. Clayton Coal Co.*, 86 Col. 270 (281 P. 111, 74 A. L. R. 467), also cited by defendant, the court held that the practical construction by the parties of the writing in suit evidenced merely by several orders for the commodity affected did not afford any means of determining how much of such commodity would be purchased thereafter. In that case we find the following expression in the opinion by Mr. Justice Alter:

"The defendants, by remaining noncommittal with respect to the contract, put themselves in this position: If the price of coal advances and we see that it is advantageous for us to contend that a valid contract exists, we can do so, but if the price decreases, we will be at liberty to contend that there was no written acceptance and that the 'contract' was merely a price list, and for the purpose only of determining the price of such coal as we have actually purchased and received."

In the case at bar, plaintiff was not noncommittal, and the practical interpretation of the parties was in conformity with plaintiff's construction of the contract.

In *Halloway v. Mountain Grove Creamery Co.*, 286 Mo. 489 (228 S. W. 451), also cited by defendant, in deciding whether an agreement to pay certain prices for first and second grade cream was valid or

unilateral, the court held that the defendant did not agree to furnish any particular amount of cream, and, for that reason the contract was unilateral and unenforceable.

In the case at bar, we hold that a fair construction of the entire contract discloses that defendant agreed to deliver sufficient gasoline for plaintiff's trade, not in excess of 78,000 gallons, during any twelve-month period.

Somewhat similar contracts have been construed in the following cases: *Memphis Furn. Mfg. Co. v. Wemyss Furn. Co.*, 2 Fed. (2d.) 428; *Luetkemeyer v. Murdock*, 267 Fed. 158; *Burgson & Co. v. Williams Smithwick Co.*, 155 Miss. 351 (121 So. 817).

5. The defendant contends that it can not be charged upon the contract in question, for the reason that the retention of possession of leased premises by the landlord releases the tenant from liability for rent. In support of this proposition, defendant cites: *Obermeier v. Mortgage Co. Holland-America*, 111 Or. 14, 21 (224 P. 1089); *Alvord v. Banfield*, 85 Or. 49, 56 (166 P. 549); *Automobile Truck Tractor & Implement Co. v. Salladay*, 55 Cal. App. 219 (203 P. 163, 165).

The Oregon case, first cited, deals with the rights of a tenant under a written lease where the landlord failed to put such tenant into possession.

The second Oregon case holds that the defendant, to whom leased premises were sold subject to the lease, was liable to the trustees of the original lessee for a deposit made by said lessee as security for the performance of the terms of a lease, the terms of which had been fully performed, because such defendant "assumed all the lessor's obligations thereunder, in-

cluding the obligation of the said George A. Housman, the original lessor, with reference to the repayment of the deposit in said lease provided for."

The rule is there declared that—

"When the relations of landlord and tenant are at an end and the lessee has surrendered the premises and the landlord accepted the same and thus put an end to the lease, so far as the rights of the parties to it are concerned all covenants therein, in favor of either party, are at once terminated when no cause of action has accrued or matured during the life of the lease."

In the case at bar, however, it is claimed that a cause of action accrued during the life of the lease.

The California case, above cited, holds that a lessor can not collect rent for the use of a chattel after he has repossessed himself thereof by reason of an alleged default in payment of an installment. No such course on plaintiff's part appears in the case at bar.

■ 6. Defendant supports his motion for nonsuit by saying that a contract of bailment imposes a duty upon the bailee to return the property, which is the subject of the bailment, to the bailor when the bailee can not comply with the contract.

The case of *State v. Chew Muck You*, 20 Or. 215 (25 P. 355), is cited in this connection. That case holds that one, to whom property has been entrusted for the purpose of delivering the same to a third party, violates the criminal statute of this state by failing and refusing to deliver such property upon demand being made by the one entitled to it upon such bailee.

Neither that case nor the citation given of 6 C. J. 1085, announce the rule that, where the bailor breaches its contract with the bailee, and then defends on the ground that the contract is a nullity, the bailee is then

without a remedy upon such contract for damages, because of the bailor's breach thereof, unless and until the bailee restores the property to the bailor.

7. As a further reason why its motion for nonsuit should have been sustained, the defendant says that a contract which contemplates the immediate return of the consideration to the promisor is nudum pactum.

The case of *Velie Motor Car Co. v. Kopmeier Motor Car Co.*, 194 Fed. 324, is cited to this point. With reference to the above rule, it holds that a phrase in a contract which reads, "and of $1.00 each to the other paid," etc., imports no consideration for it may well mean the exchange of the same dollars. -Obviously, this case is not applicable to the case at bar. The contract in the case at bar does not contemplate the immediate revocation of the exclusive rights granted to defendant, the repudiation of plaintiff's promise to purchase of defendant all of the gasoline and other motor fuel needed by him, and not to permit the display of any competitive sign upon said premises.

Defendant's second, third, fourth, fifth, sixth and seventh assignments of error deal with the admissibility of testimony.

Defendant contends that loss of profits constitute special damages; that plaintiff's complaint does not contain any allegation of special damages, and for that reason any testimony in support of such damages was inadmissible.

In the early case of *Wisner v. Barber*, 10 Or. 342, we find the following pronouncement:

"Actual damages include the direct and actual loss which a party sustains when hindered or prevented from completing his contract. The loss sustained in-

cludes the loss of profits which would have been realized as the immediate and necessary result of the fulfillment of the contract. Such profits growing out of the contract itself as one of its direct and legitimate fruits, constitute a just and proper element of the damages to be recovered against the party whose breach of the contract has prevented such profits from being realized. They are a part and parcel of the contract, and are supposed to have entered into the contemplation of the parties when the contract was made, and to deny them would be to give the delinquent party the benefit and advantage of his own wrong."

In that early case, the plaintiff offered to prove the profits of which he was deprived by the termination of the contract by defendant. We quote further from the opinion in that case:

"And the damages in this case resulting necessarily from the breach of the contract upon the part of the defendant, it is not necessary that they should be specially stated in the complaint."

If it be said that the case just cited deals with profits which were not dependent upon the chances of trade, while in the case at bar, the profits sought to be recovered were so dependent, still the writer is of the opinion that the testimony in that regard was admissible because, at worst, plaintiff's complaint presents a defective allegation of special damages. Plaintiff alleges:

"That as a result of the failure of the defendant to comply with said contract, * * * the plaintiff was compelled to purchase gasoline for said filling stations from other sources less advertised and not so generally known or used and in lesser quantities, etc."

Bearing in mind that plaintiff was under contract to buy from defendant all of the gasoline he sold, the lesser amount purchased must represent a less amount

sold to plaintiff's trade. This allegation might be subject to a motion to make more definite and certain; but after issue joined, it suffices to present the question of a depreciation in plaintiff's sales of gasoline.

 The following question was propounded to plaintiff on his direct examination to which, over objection, he made answer as follows:

"Q. What effect, if any, did the change over to Veltex gasoline have as to the quantity sold or dispensed with at your filling station, the filling station mentioned in this complaint?

"A. Why my gallonage fell off from twelve to fifteen hundred gallons per month."

We can not agree with defendant that his was a mere statement of opinion. We construe it to be a statement of the alleged fact that each month during the period in question, plaintiff sold to his trade from twelve to fifteen hundred gallons less than he had been selling in previous months. The required data for computing the loss on that item is supplied by the provision in the contract enabling him to sell gasoline for four cents per gallon more than he was to pay defendant for it.

We find no prejudicial error in the rulings of the trial court upon admission of testimony.

 The contract provided for the payment of $65 per month rental. If any part of that rental could have been realized by plaintiff in mitigation of his damages, that fact could be shown under the general issue: *Horn v. Elgin Warehouse Co.*, 96 Or. 403 (190 P. 151). Defendant was not prejudiced by the order of proof. The testimony tended to show that plaintiff could not have mitigated the damages caused by defendant's refusal to pay the stipulated monthly rental.

Assignments of error from eight to twenty-three, inclusive, are based principally upon the propositions of law invoked in support of those assignments which we have discussed. Assignments numbered from eight to eighteen challenge certain instructions which were given. The remaining five urge that error was committed by the trial court in refusing to give certain instructions requested by defendant. We find no prejudicial error.

It is ordered that the judgment of the circuit court be affirmed.

BEAN, C. J., BROWN, RAND and BELT, JJ., concur.

ROSSMAN and CAMPBELL, JJ., did not participate in this decision.