# BARKER v. UTAH OIL REFINING CO.

No. 6954. Decided March 21, 1947. (178 P. 2d 386.)

See 36 C. J. Landlord and Tenant, sec. 988; 32 Am. Jur. 180, 230.

*Ira A. Huggins, J. T. Hammond, Jr.,* and *Burton W. Musser,* all of Salt Lake City, for appellant.

*David K. Holther* and *Arthur W. Woolley,* both of Ogden, for respondent.

LATIMER, Justice.

Plaintiff recovered judgment for the amount of rent due under the terms of a written lease. Defendant appeals and assigns seventeen errors upon which it relies for reversal.

These errors can be grouped under three general headings, namely: (1) The Court erred in construing the lease to relate only to a portion of the premises; (2) the Court improperly excluded evidence material to the defense of appellant, particularly with respect to eviction; and (3) the Court erred in holding the evidence admitted, together with that tendered, did not establish an eviction by the plaintiff.

Plaintiff commenced the action by the usual pleading for breach of contract for non-payment of rent. Defendant's answer admitted the execution of a lease, the non-payment of rent, and attached a copy of the lease to the answer. The copy of the lease attached described the leased property as *all* of Lot 47, Plat B, North Ogden Survey, which covered considerably more property that the service station involved in plaintiff's complaint. Affirmatively, defendant alleged an eviction by the plaintiff. No facts were set up in the answer to show what defendant claimed to justify the pleaded conclusion of eviction. We must, however, accept this as an issue since plaintiff failed to raise any objection to the manner in which it was pleaded.

Plaintiff replied to the affirmative allegations of the answer, denied generally the eviction, denied that the property leased included *all* that was described and referred to in the lease, and alleged that the lease was ambiguous and uncertain. He further pleaded facts which indicated the parties did not intend to lease all of the property described in the lease.

The issues presented to the trial court by the pleadings were these: Did the lease cover all or only a portion of the premises described in the lease? Did the plaintiff interfere with defendant's right to quiet and peaceful enjoyment of *all* the premises as described in the lease or part of the premises as set forth in plaintiff's reply?

By reference to the pleadings, the statement of counsel for both parties, the testimony proffered and rejected, and the briefs of the parties before this court, it is evident the real issue in the case is the question of what property was leased.

Plaintiff's contention from the start of the action is well stated in this quotation from his brief:

"It should constantly be kept in mind that the confectionery store was not station No. 798 and that the dance hall was not station No. 798 and that appellant had nothing to do with the dance hall (Bill of Exceptions page 18) and no account of income therefrom was ever made to appellant incident to its construction and appellant is not sure of the date of its construction guessing at 1940 or 1941 and all this despite witnesses' frequent visits to station No. 798 and continuance of gasoline sales by appellant to respondent into 1943."

On the other hand, defendant contends the lease covered *all* of Lot 47, Plat B, including all of the building in dispute.

When the trial of the action commenced the trial judge brushed aside the question as to what property was intended to be leased and directed defendant to proceed with its defense of eviction. However, when the defendant attempted to introduce the facts upon which it relied for eviction, it was evident the testimony for the most part referred to that portion of the premises which plaintiff claimed was not leased.

The court ignored this issue in the trial of the matter because plaintiff had operational control of the premises; nevertheless, in its findings of fact a specific finding was made that the defendant only leased that portion of the premises identified as station No. 798. This was a material finding and there is no evidence in the record to justify it.

The question as to what property was leased is one of the controlling questions in the case. Therefore, it becomes necessary to briefly discuss who had the burden of proving this issue. The leasing clause was unambiguous and plaintiff, having alleged that the lease did not express the true intent of the parties, it was his burden to establish the facts. The plaintiff having failed to carry this burden, and the record being silent, the court erred in making a finding of fact not supported by the record. This error was prejudicial to the rights of the defendant. In the event this action is retried, and if in order to properly present this issue there is required a prayer for reformation of the lease and pleadings in support thereof, the trial court should permit appropriate amendments.

The next group of errors relied on by defendant raises the correctness of the court's ruling on eviction. When the defendant attempted to prove the issue of eviction the court announced the ruling that because the plaintiff remained in operational control of the premises, defendant could not prove an eviction regardless of the acts of plaintiff. During the discussion on the admissibility of this evidence is the time in the trial of the action when loose talk of possession clouded the issue.

When the pleadings are considered as a whole, it is admitted by the plaintiff that defendant had possession of part of the premises, either actually or constructively. Suing on a lease and alleging non-payment of rent, assumes defendant had some rights in the premises. The pleading of an eviction presupposes a possession, either actual or constructive, as the term is ordinarily used to indicate acts which constitute an interference with peace-

ful possession and enjoyment by one claiming under a paramount title. While defendant in its answer did not allege whether or not it claimed actual eviction or constructive eviction, the pleading was all-inclusive. Black's Law Dictionary defines both and it will be noted each includes the element of possession:

"Actual eviction is an actual expulsion of the tenant out of all or some part of the demised premises; a physical ouster or dispossession from the very thing granted or some substantial part thereof. * * *

"Constructive eviction. * * * With reference to the relation of landlord and tenant, there is a 'constructive eviction' when the former, without intent to oust the latter, does some act which deprives the tenant of the beneficial enjoyment of the demised premises or materially impairs such enjoyment. * * *"

A general denial of eviction does not in and of itself deny a lack of possession. On the contrary, it only traverses the allegations that the plaintiff did interfere with peaceful possession or quiet enjoyment. Had plaintiff intended to raise other issues he should have pleaded ■ his specific defenses. In his reply plaintiff in at least two paragraphs alleges defendant occupied the premises. Thus considering only the pleadings, it is difficult to determine how lack of possession by the defendant was ever put in issue.

Possession not being put in issue by the pleadings, the court should have permitted defendant to proceed with the evidence of eviction. During the course of the trial, defendant introduced or offered evidence on converting the garage to a dance hall, locking up the show- ■ room, and discontinuing the purchase of gasoline. Without detailing all of the evidence the court permitted some to be introduced and rejected some. Part of the evidence tendered by defendant and rejected by the court is as quoted herewith:

"Mr. Huggins: At this time, if the Court please, we offer to show by this witness that Wayne Barker, the plaintiff, was in possession of this property covered by the lease, and that up until the early part of 1943 he operated it as a service-station, where gasoline, oils, greases and other motor-vehicle fuels and accessories were sold to the public

generally; that during the early part of 1943 the nature of the operation of the business upon these premises was converted and changed, without the consent or approval or knowledge of the defendant lessee, except from what they observed, from the business of a service-station, where the defendant's or a similar concern's products were sold, to a dance-hall; that the portion theretofore used as a display room and storage room for the defendant's products was converted—there was a display room of the defendant's products and a store-room for merchandise usually and commonly used in connection with a service-station were converted for use in connection with a confectionery and dance-hall, and that without the knowledge, consent, or approval of the defendant; that the keys at that time were in the possession of the plaintiff, lessor; that he has retained them ever since; that we have not had possession since that time, but that the plaintiff in this suit has had free and exclusive possession of the property covered in the lease and all parts of it, since the early part of 1943, and we have been excluded therefrom."

Had the witness been permitted to testify to that part of the tendered evidence which indicates a conversion from a garage to a dance-hall, and a conversion of the display and storage rooms, a question of fact would have been presented showing a change in the character of the premises. This evidence in conjunction with that as to what was intended to be leased would then be material to determine whether there was an eviction from what was really leased. The lease definitely shows the premises were leased for the purposes of a service station, and to convert essential parts, if intended to be leased, such as the garage to a dance-hall, would be a substantial interference with peaceful possession and enjoyment.

At the time the offer was made, it was immaterial that no showing had been made as to plaintiff's capacity when he was left in control of the premises. Plaintiff covenanted with defendant that it should have peaceful possession, and enjoyment, of the premises. He had knowledge of defendant's rights in the premises and had knowledge that the very lease he was to found his rights on prescribed that he would not interfere with defendant's peaceful possession and enjoyment. If he and the defendant agreed to leave him in control of the place and permit him to run the station, he

cannot breach his own covenant by altering the premises so as to destroy their use for the purposes provided in the lease. If he claims the right to do this then he must allege and prove it.

It is not intended by this decision to express any opinion as to the admissibility of all of the evidence tendered or to determine the weight to be given it. A decision on the question of what property was intended to be leased will determine the materiality of any evidence touching on eviction. These are matters which can be dealt with in subsequent proceedings, if any.

The judgment is reversed with direction to grant a new trial with permission to amend pleadings upon request of either party. Costs to appellant.

McDONOUGH, C. J., and WOLFE, concur.

WADE, Justice (concurring in result).

I concur with the result.

However, I think the question of whether defendant was ever in possession of the leased premises is immaterial. I recognize that a person cannot be evicted from premises without ever having had possession because eviction contemplates the taking of possession of the premises in question by putting the other person out of such premises. And a person cannot be put out of possession of premises without first being in such possession. But here we are not so much concerned with what constitutes an eviction, as we are with what facts are necessary to constitute a defense to plaintiff's action to recover rent for the premises. Of course defendant must be limited in his proof to the facts included in his plea to the effect that he was evicted from the premises. But if within the facts so pleaded the defendant can prove sufficient facts to constitute a defense to plaintiff's action, then, in my opinion, it is immaterial whether he proves an eviction or not. In other words, if defendant can, without proving any facts which he has not alleged in his answer, prove a defense to plaintiff's action for rent,

even though he fails to prove all the facts which he alleges which are necessary to constitute an eviction, then he should prevail. The facts which he alleged but fails to prove should be treated as surplusage and be disregarded.

Thus if the defendant had in simple and concise language merely alleged the facts which he proved and offered to prove, and in so doing had omitted from his pleadings the term "eviction," and also failed to allege that he was ever in possession of the premises, such pleading would have been sufficient to constitute a defense to plaintiff's action for rent of the premises. If the tenant is deprived of the use of the leased premises by the landlord occupying and using the same for his own purposes, the landlord thereby certainly precluded himself from recovering from the tenant rent for the use of such premises. Such allegations would certainly constitute a defense to plaintiff's action for rent, and this would be true regardless of whether defendant ever was actually in possession of the premises or not. On the other hand such facts are included within the facts alleged in defendant's answer, to the effect that he was evicted from the premises. No one is here claiming that the facts which he proved and offered to prove do not come within defendant's allegation that he was evicted. The claim is that he cannot succeed because he failed to prove or offer to prove all of the facts necessary to constitute an eviction. In other words while it is conceded that the facts which defendant proved and offered to prove are sufficient to constitute a defense to plaintiff's action, and while such facts are included within the facts pleaded, yet, we, by inference, at least, are holding that a failure to prove all that was alleged, even though the part not proved is not necessary to constitute a defense, has the effect of defeating defendant's defense to plaintiff's action for rent. Such, I submit is not the law, nor ever has been the law of this state.

It is thought that no one would contend that such a result would be reached, had the defendant merely made his allegations of the facts which would constitute an eviction, without using that term. Does the fact that he uses that ancient legal

term in framing his pleadings prevent defendant from availing himself of facts included within that term which would otherwise constitute a defense to plaintiff's action? If defendant is thus deprived of his defense then the law is materially different in such case than it ordinarily is. A very large percentage of all pleadings in this state contain some allegation of fact or fiction that is not necessary to constitute a cause of action, or a defense. In the ordinary case no one would contend that such surplusage in pleading would defeat the pleader's action or defense. I therefore contend that in this case it should not be allowed to have that effect.

PRATT, Justice (dissenting).

The action was founded upon a written lease upon which defendant admittedly failed to pay rent for the period from January 16, 1943 to the end of the lease. The pleadings show a dispute as to whether or not "Station No. 798" on Lot 47, Plat B of North Ogden Survey was the extent of the lease—as claimed by plaintiff—or Lot 47, Plat B—as claimed by the defendant. The original lease was not introduced, but a copy was attached to defendant's answer, *which plaintiff admitted to be the lease.* In its caption the words "Station 798" appear, however, in the leasing clause the wording "Lot 47, Plat B" is all that is used.

The testimony, however, centers upon a building on Lot 47 made up of three parts: A service station (apparently plaintiff's alleged "Station No. 798"), a garage, and a lunch stand. The purport of the testimony is that the garage was converted into a dance-hall by plaintiff, the landlord, against the tenant's wishes thus constituting a constructive eviction, in view of the fact that the lease was for service station purposes. I quote part of the paragraphs of the lease believed to be important in considering this case:

"That in consideration of the faithful performance by the Company of its covenants hereinafter expressed, the Lessor has leased, let and demised, and by these presents does let and demise unto the Company,

its successors and assigns, the following parcel of land situated in the City of North Ogden, County of Weber, State of Utah, and particularly described as follows, to wit:

"Lot 47, Plat 'B', North Ogden Survey, Weber County, State of Utah.

"Together with the gasoline service station and other improvements now on said premises. * * *

"(a) Lessor will not * * *, lease, let or demise any part of the remainder of said premises adjoining those hereinabove described, * * * without including * * * a covenant * * * restricting the grantee or lessee, * * * from selling, bartering, or giving away on the premises so granted or demised by Lessor, any gasoline, oil, grease, or other petroleum products of a kindred nature during the term of this lease * * * and that Lessor will not * * * so use or permit such use of any such property now or hereafter owned or controlled by Lessor.

"(b) * * * that in the event the building on said premises be destroyed by fire, or otherwise, * * * if Lessor shall fail to rebuild or repair the same within thirty (30) days thereafter, the Company, at its election, may rebuild or repair the same * * *

"1. To pay to Lessor at Lessor's above address, during the term hereof, the sum of Sixty ($60.00) per month, payments to be made on or before the 15th day of the month following the month in which said rental is earned, and in addition to said monthly rental, to pay to Lessor a sum of money equal to one cent (1¢) per gallon for each gallon of gasoline over Four Thousand (4,000) gallons sold during any calendar month from said premises by the Company or its agents or assigns. * * *"

Defendant's allegation of eviction is denied in plaintiff's reply. In that reply plaintiff claims that the only thing leased was "the service station room, restrooms, anteroom, and driveways;" and that this was what was meant by "Station No. 798."

The prevailing opinion says:

"* * * the trial judge *brushed* aside the question as to what property was intended to be leased and *directed* defendant to proceed with its defense of eviction." (Emphasis added.)

It should be kept in mind that defendant is the appellant, and the objecting party, if objection is in order. If directed to proceed erroneously no doubt appellant would have objected to it. Now, what happened? Plaintiff alleged the lease

of station No. 798; defendant alleged and introduced the lease copy, which plaintiff *admitted in his reply* but tried to explain away. Counsel for defendant stated the issues thus:

> "We admit that we haven't paid the rent since January 16, 1943. We don't admit the lease. (answering the court's statement that defendant admitted the lease) We plead the lease and plaintiff admits the lease."

The court then said:

> "It is just your defense; that is the only question before the court. You may go forward on that."

Defendant went forward without objection. If defendant didn't object to this procedure, why should we? No doubt the parties were satisfied with the copy of the lease to show what was leased, *the copy having been admitted by plaintiff as true*—at least until plaintiff came forward with evidence in rebuttal to show the lease terms meant something different than their face value, whatever that face value might be determined to be. So the trial went forward upon the issue of eviction. They never got to the rebuttal; of which fact only plaintiff would be likely to complain, and does not complain.

Defendant produced two witnesses. A resume of the testimony of the first witness is as follows: He was the property and equipment superintendant of defendant; he was such on October 16, 1939, the initial date of the lease; among his duties was the inspection of defendant's leased and owned properties; he inspected the property in question here, before this lease and is familiar with its operation since; the propery was used for a service station, a garage, and a lunch stand; the back part of the building was used for a repair shop; the northwest part in front of garage was used as a service station; and the rest as a lunch stand and confectionery; one-fourth of the building was used as a service station, one-half as a garage, and one-fourth as a lunch stand (we shall merely refer to this part as lunch stand instead

of lunch stand and confectionery), (the witness described the service station in terms that pictured it as the usual station of that kind, but did say that the greasing equipment was in the garage); up to January 16, 1943 the property was used as a service station the products for which were purchased from defendant; witness visited the place several times in January 1943 and later and found the station closed and pop bottles stored in the service station part; no one was at the station; plaintiff (the landlord) was in possession of the place at the time and *had had possession since the lease was executed* and operated it as a service station until 1943; plaintiff converted the garage into a dance hall around 1940-1941, and thereafter used it as such; and this conversion was not with defendant's consent.

In addition to this testimony defendant sought to prove that plaintiff's (the landlord's) purchase of petroleum products from defendant (tenant) gradually dwindled through the years and finally ceased in 1943. This offer was rejected by the court.

A resume of the testimony of defendant's second witness is this: He is a salesman for defendant; only part of the property was used as a service station—that part which was set aside for that purpose (this might be interpreted to agree with plaintiff's theory of the lease); he also described the usual service station with its display shelves; in answer to a question as to how "the remainder" was used, he spoke of the dance hall but he could not remember when its use as such started.

At this point in the trial counsel for defendant made the following offer of evidence which was rejected and the case ended with a granting of a motion for judgment on the pleadings:

"Mr. Huggins: At this time, if the Court please, we offer to show by this witness that Wayne Barker, the plaintiff, was in possession of this property covered by the lease, and that up until the early part of 1943 he operated it as a service-station, where gasoline, oil, greases, and other motor-vehicle fuels and accessories were sold to the public generally; that during the early part of 1943 the nature of the operation of the business upon these premises was converted and changed,

without the consent or approval or knowledge of the defendant lessee, except from what they observed, from the business of a service-station, where the defendant's or a similar concern's products were sold, to a dance-hall; that the portion theretofore used as a display room and storage room for the defendant's products was converted—there was a display room of the defendant's products and a store-room for merchandise usually and commonly used in connection with a service-station were converted for use in connection with a confectionery and dance-hall, and that without the knowledge, consent or approval of the defendant; that the keys at that time were in the possession of the plaintiff, lessor; that he has retained them ever since; that we have not had possession since that time, but that the plaintiff in this suit has had free and exclusive possession of the property covered in the lease and all parts of it, since the early part of 1943, and we have been excluded therefrom."

Eviction contemplates an antecedent possession in the tenant. 32 Am. Jur. 180, Sec. 190, note 10; and 230 Sec. 245; *McClurg* v. *Price,* 59 Pa. 420, 98 Am. Dec. 356; *DeFries* v. *Scott,* 9 Cir., 268 F. 952; *Allan* v. *Guaranty Oil Co.,* 176 Cal. 421, 168 P. 884. If the tenant consented to the landlord's entry into part of the premises he cannot assert that he has been evicted within the meaning of the rule that a partial eviction of the landlord relieves the tenant entirely from liabiliy for rent. 32 Am. Jur. 231, Sec. 245 and notes. Actual eviction is the actual expulsion or ejection of the tenant from the premises; constructive eviction is a substantial interference with the tenant's use of the premises causing him to abandon them, *Chelsea Hotel Corporation* v. *Gelles,* 129 N. J. L. 102, 28 A. 2d 172; but each class of eviction contemplates an antecedent possession in the tenant. A service station operator's retention of possession of premises he leased to an oil company under agreement that operator would purchase supplies from lessee did not release lessee from liability for rent. *Moore* v. *Shell Oil Co.,* 139 Or. 72, 6 P. 2d 216. A failure of the landlord to deliver possession of the premises to the tenant after the execution of the lease does not constitute an eviction. 36 C. J. 259, Sec. 982, Note 7.

The lease ran for five years: October 16, 1939, to October 16, 1944. It was executed September 23, 1939. *Defendant was not entitled to possession until October 16, 1939.* De-

fendant's witness stated that the landlord has had possession since the lease was executed. *The lease was executed September 23, 1939.* When then, and by what act, did defendant tenant enter into possession? *When* and *if* it made some arrangement with the landlord to assume possession for and on its behalf—but there is no evidence upon this, nor was such proof tendered by defendant in its offer of testimony. The prevailing opinion speaks of "operational control" by the landlord. If the landlord has never given up "operational control" of the premises from and after the date of the execution of the lease, then, unless that "operational control" is retained pursuant to some sort of agency agreement —not shown in this case—with the tenant, the tenant though it may have an action against the landlord for failure to give up possession (see *Heywood* v. *Ogden Motor Car Co.,* 71 Utah 417, 266 P. 1040, 62 A. L. R. 1232) can not maintain eviction as a defense to the payment of rent. See authorities cited above. On the question of the landlord's assuming the role of operator of the gas station and attempting to later assert his rights as landlord adverse to that assumption, see *Phillips Pet. Co.* v. *Skinner,* 140 Kan. 413, 36 P. 2d 968. The lease does not by its terms include any provision which would place plaintiff (the landlord) in possession of the premises as agent for defendant in the operation thereof or in any capacity. Thus if defendant sought to show possession in itself (from which possession it was evicted) by plaintiff as its agent, it should have offered testimony of that agency relationship. The lower court invited such testimony by his questions, but it is uncertain that counsel for defendant understood what the court had in mind. For instance: In one place counsel said this:

"If we left the owner of the premises in possession of the property, and there is no question but what we did, and he converted our business into his business and kept the profits without our consent, he is not entitled to judgment of eviction."

He makes no explanation of what that "leaving in possession" means. If it means that plaintiff was an independ-

ent operator of the station to whom defendant sold petroleum products, then, of course, defendant was not in possession and there would be no eviction though there might be a breach of some operating agreement. On the other hand if plaintiff was an agent of or under a contract with the defendant in possessing and operating the station, then defendant did have possession, and the questions would then arise as to whether or not plaintiff's actions were a violation of the agency agreement and if so, whether or not they constituted a constructive eviction of defendant. The proposed record of purchases of gasoline by plaintiff from defendant has nothing on it indicative of plaintiff being defendant's agent. At another place counsel said:

"We want to show that we had no one in possession; that Mr. Barker was in possession: that he remained in possession of the property. * * * Now if he had possession then we didn't have peaceable possession."

Later counsel made another statement of defendant's case. It was this:

"Here is our theory of the case: The defendant in this cause leased certain premises, including a service station and garage, from plaintiff. After the lease was executed *and the contract made* (italics ours) the defendant put plaintiff back in possession to operate it for the defendant."

This would indicate that there was some kind of an agency agreement—maybe referred to by the italicized words—and apparently the lower court so thought as he then said:

"Well isn't it a fact that you have got a subsequent agreement to this, that has been violated?"

And later, when counsel used an illustration of putting a third party in as operator instead of the landlord, the court said:

"You would have some kind of an agreement, then other than the lease."

In spite of these statements of the lower court proof of the contractual relationship between the landlord as an operator and the defendant as either principal or as supplier of petrol-

eum products was not attempted. Counsel's offer of proof which was rejected did not supply the deficiency in proof, nor is there anything in the pleadings to supply it. It seems obvious that the question of whether or not the landlord evicted the tenant is bound up in the agreement, if any, whatever it may have been, whereby the tenant put the landlord in possession to operate the station. The citations we have set out above clearly indicate this. A mere statement by counsel that defendant left plaintiff in possession of the station to operate it proves nothing.

The prevailing opinion speaks of the pleadings as admitting that the defendant had possession—yet, defendant's counsel and its witness deny that they had possession—except of course as to some sort of arrangements, undisclosed, with the landlord. The prevailing opinion speaks of plaintiff having covenanted with defendant that it should have peaceful possession. That of course is no proof that defendant took possession.

The evidence tendered by defendant as to occupation and possession by the landlord was material and should have been received, but its rejection can hardly be said to be prejudicial in view of the fact that had it been received, it would have been insufficient to support the defense of eviction.

The lower court found—as was pleaded by plaintiff—that the lease was for Station No. 798. There may be a question as to whether or not this was a justifiable interpretation of the terms of the lease as it is set out and admitted in the pleadings, but it does not change the requirements of proof of eviction.

On the issue of eviction, be the property leased what it may, the burden of proof lay with defendant. To substantiate that burden, it would have to prove that it entered into possession under the lease and thereafter was either actually or constructively evicted from that possession. The evidence of entry into possession of any property under the lease is missing. In fact, possession is testified to as having been in the landlord continuously since a time prior to the tenant's

right to possession, to wit: September 23, 1939. The prevailing opinion says that it is admitted in the pleadings that defendant "occupied" the premises. No doubt this has reference to the reply where the word "occupied" is used in discussing the premises used by defendant under a former lease with another landlord. The testimony is that the present landlord has had possession since the execution of this lease.