[No: 33069. Department One. April 14, 1955.]

C. O. GEYEN et al., *Respondents*, v. TIME OIL COMPANY, *Appellant.*[1]

¹Reported in 282 P. (2d) 287.

*Peyser, Cartano, Botzer & Chapman*, by *John W. Chapman*, for appellant.

*John Caughlan*, for respondents.

OTT, J.—This is an appeal from a judgment entered upon the verdict of a jury in favor of the plaintiffs in an action for breach of contract.

January 1, 1949, the appellant, Time Oil Company, leased to Ivan L. Blair real estate in Seattle, upon which was located a gasoline service station, an automobile repair garage, several small rental garages, and a dwelling.

The provisions of the lease pertinent to the issues involved in this case were:

(1) Term from January 1, 1949, to June 30, 1952;

(2) Monthly rental of ninety dollars;

(3) The purpose of the lease was to conduct "therein a superservice station and repair garage & dwelling";

(4) The lessee agreed (a) to sell products pursuant to the fair trade act, and not to resell the products at less than the price posted, as determined by the lessor, (b) to sell only the petroleum products as determined by the lessor, and (c) not to permit the station to be closed for business for more than a continuous twenty-four hour period, under penalty of forfeiture;

(5) The living quarters were leased with the station for the purpose of enabling the lessee to more advantageously operate the station; and the dwelling was not to be subleased.

Prior to August 15, 1949, respondent C. O. Geyen learned that Blair had not operated the station for some time, and contacted him concerning an assignment of his lease. On August 15th, respondent Ruby L. Geyen and Blair went to the office of the appellant to arrange for the Geyens to operate the station. A written assignment of the lease, dated August 15, 1949, was executed by Blair and by Mrs. Ruby

Geyen on behalf of herself and her husband. The written consent by the appellant states:

"The undersigned Lessor hereby consents to the above assignment of lease *on the date first above written.* TIME OIL Co., Lessor, By A. L. Pate, Asst. Secy." (Italics ours.)

Later the same day, Mrs. Geyen met two of appellant's representatives at the station. She signed a receipt for appellant's equipment received by her, contracted with Blair for his equipment, received the keys to the station, and took possession of the premises. She paid cash for the gasoline and other supplies which she ordered and which were delivered August 16th.

August 17th, she telephoned for more gasoline. In the meantime, the representatives of appellant had learned that Mr. Geyen was a Negro. Mrs. Geyen was white. The further delivery of gasoline and other products was refused by appellant, its contention being that it had elected not to recognize the assignment as a legal and binding agreement. Subsequently, the Geyens made requests for deliveries, but none was made.

August 19, 1949, appellant demanded immediate possession of the premises. Mr. Geyen answered the demand by tendering the rent and requesting delivery of gasoline. Both were refused. No further demand for possession of the premises was made until March 14, 1950, when one of appellant's representatives served upon the Geyens a three-day notice to pay rent or quit. Upon being served with a copy of the notice, Mr. Geyen again requested that gasoline be delivered to him. The next day, a delivery was made, but the delivery receipt was made out in the name of the former tenant, Blair. Geyen refused to accept the gasoline unless the delivery receipt was in his name. This request was refused. No further effort was made by Geyen to have gasoline delivered.

February 21, 1951, the Geyens entered into an oral sublease of the station to James I. Jenkins for a monthly rental to be paid to respondents. This arrangement was satisfac-

tory with the appellant, and gasoline deliveries were made to Jenkins.

The respondents remained in possession of the premises from August 15, 1949, to June 30, 1952, during which time they lived in the dwelling, operated the repair shop, and paid the rental and all costs of keeping the station open.

On February 11, 1953, respondents commenced this action for breach of contract. The appellant answered the complaint, denying the allegations thereof, and pleaded, as an affirmative defense, the statute of limitations as a bar to the recovery of any damages prior to February 11, 1950. The respondents' demurrer to the affirmative defense was overruled, and the cause was set for trial. After the third day of trial, the respondents submitted a written trial amendment which alleged a continuing breach of the contract from August 15, 1949, and moved the court for permission to amend the complaint. The appellant resisted this amendment. However, the court granted the motion, and no request for a continuance was made.

The jury returned a verdict for the respondents in the sum of $7,130. Motions for judgment notwithstanding the verdict and for a new trial were denied. Judgment was entered upon the verdict, and this appeal followed.

In its assignments of error, the appellant contends that the lease was invalid (1) because it contained no specific agreement on the part of the appellant to deliver gasoline, and (2) because the price of the gasoline was too indefinite and uncertain.

The lease required the respondents to maintain a superservice station on the premises. The appellant had sole control over the products the respondents would be permitted to sell. The contract could be forfeited if, for a period of twenty-four hours, petroleum products were not offered for sale to the public by respondents. A superservice station cannot be maintained on the premises, if the lessor refuses to permit any petroleum products to be sold. Under the terms and conditions of the lease, there was an implied obligation on the part of the appellant to sell petroleum

products to the respondents or permit them to obtain such products elsewhere. See *Reeker v. Remour*, 40 Wn. (2d) 519, 524, 244 P. (2d) 270 (1952).

■ Appellant relies upon *Washington Chocolate Co. v. Canterbury Candy Makers*, 18 Wn. (2d) 79, 138 P. (2d) 195 (1943), in support of its contention that the price of the gasoline was too indefinite and uncertain. However, in that case, the vendor's testimony established that different prices were charged to different buyers and that this was done at the discretion of the vendor. In the instant case, the price of gasoline was ascertainable with reasonable certainty from the uniform and definite posted tank wagon price, which was available daily. The contract was not rendered unenforcible because of indefiniteness of price. *Moore v. Shell Oil Co.*, 139 Ore. 72, 79, 6 P. (2d) 216 (1932).

Appellant next contends that the three-year statute of limitations applies for the reason that the agreement between the parties was oral, since the alleged written assignment was void.

■ Appellant's lease with Mr. Blair was a valid written contract. The assignment thereof to the respondents was claimed to have been invalid because it was not signed personally by C. O. Geyen. RCW 19.36.010 [cf. Rem. Rev. Stat., § 5825] requires that the contract be "in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized." The written assignment, which was accepted and acted upon by all parties, fully meets the statutory requirements. *Van Geest v. Willard*, 27 Wn. (2d) 753, 764, 180 P. (2d) 78 (1947). The appellant recognized the existence of an assigned written lease by the service of the notice to quit, dated March 14, 1950, and by appellant's letter, dated May 20, 1952, giving notice to the Geyens of the expiration date of the lease. The proof clearly established a valid assignment of a written lease, and hence the six-year statute of limitations applies.

■ Was it error for the trial court to grant the trial amendment? The issues were not changed materially by the amendment; it simply alleged the breach to be continu-

ing. Applying the rules announced in *Hendricks v. Hendricks*, 35 Wn. (2d) 139, 211 P. (2d) 715 (1949), the appellant did not meet the mandatory provisions of the rule and, further, did not request a continuance. The trial court did not err in granting the amendment.

The trial court ruled as immaterial appellant's offered testimony that the appellant had had satisfactory contractual relations with other colored people. As to this ruling, appellant alleged error. The trial court's ruling was correct. We are concerned in this cause only with the appellant's contractual relationship with the Geyens.

Finally, appellant contends that the amount of the damages allowed by the jury is excessive. The appellant properly excepted to instruction No. 5, in which the court instructed the jury that damages could be allowed up to June 30, 1952.

 February 21, 1951, the appellant and respondents orally agreed to modify the lease, in that James I. Jenkins would operate the service station and respondents would receive from Jenkins the sum of twenty-five dollars per month as rental therefor. By so doing, the Geyens waived any further duty on the part of appellant to deliver gasoline to them for the remainder of the lease period. It was, therefore, error to instruct the jury that respondents were entitled to any recovery after February 21, 1951.

The judgment was in the sum of $7,130. Adopting respondents' contention regarding the method of computation used by the jury in arriving at its verdict, upon which the judgment was based, we conclude that it should be reduced $2,301.44.

We find no merit in appellant's remaining assignments of error.

The judgment is reversed, with instructions to grant appellant's motion for a new trial unless the respondents will accept entry of a judgment in the sum of $4,828.56.

Appellant will be allowed its costs on this appeal.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.